DES MOINES SAVINGS BANK v. E. J. GOODE and SARAH D. GOODE, Appellants.

**Fraudulent Conveyance:** EVIDENCE. By quitclaim, reciting only a nominal consideration a son, engaged in the real estate business, and insolvent, conveyed a house to his father, and then contracted for repairs thereon, with persons knowing of the transfer. The father and son testified that the repairs were contracted for at the son's expense, as part of the contract of sale, and that the true consideration was the assumption of a mortgage on the premises, and a credit on a debt due the father from the son; there being a discrepancy as to the amount of such credit. The son testified that he kept deeds executed in blank by his wife, in his office, and the quitclaim, with the nominal consideration written in, was the only one on hand at the time. *Held,* insufficient to establish fraud on the part of the son in contracting for the improvements.

SAME. A conveyance by a son to his father is not shown to have been fraudulent because the grantee states that the consideration was eight thousand dollars, while the grantor testified that it was nine thousand, when the former's evidence was taken by deposition in the absence of his books of accounts.

Liens: CONTRACTS. A plumbing company, which, after request of one engaged in the business of buying, improving and selling real estate, did work for him on credit on property which it knew he had sold, cannot, upon discovery of his insolvency, enforce a

1 mechanic's lien against the grantee or owner, with neither of whom it sustained contract relations, and for whom the debtor did not act as agent.

INSOLVENCY. It is not a sufficient reason for establishing a lien against property owned by a third person. for plumbing work done at the request and upon the credit of one engaged in the improvement and sale of real estate, that such person is insolvent

2 and therefore indifferent as to whether personal judgment is obtained against him.

Contracts: PERSONAL LIABILITY: *Sale.* The grantee is not person-
1-2 ally liable for repairs on the premises made under a contract with
4 the grantor, even where he stipulated for such repairs in the contract of purchase.

SAME. Where the grantor, as part of the contract of sale, undertakes
2 to repair the premises, and after the conveyance contracts there-
4 for with a third person having knowledge of the conveyance, and who does the work on the grantor's personal credit, the property
1 is not subject to a mechanic's lien for such repairs.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

MONDAY, OCTOBER 24, 1898.

PLAINTIFF, as assignee, of the Scoville Plumbing Company, brings this action in equity to recover judgment against E. J. Goode for nine hundred and six dollars and fifty cents and interest, and for the establishment and foreclosure of a mechanic's lien on real estate described. Defendants answer, joining issues as will appear in the opinion. Decree was rendered in favor of the plaintiff as prayed. Defendants appealed. —*Reversed.*

*Bishop, Bowen & Fleming* and *W. G. Harvison* for appellant.

*Berryhill & Henry* for appellee.

GIVEN, J.—I. In the spring of 1893, and for several years prior thereto, L. W. Goode, son of the defendants, was

engaged in buying, selling and improving real estate in the city of Des Moines. The firm of Laing & Scoville, predecessors to the Scoville Plumbing Company, did the plumbing work for L. W. Goode in the buildings built and remodeled by him up to the time said firm was dissolved, and thereafter such plumbing was done by the Scoville Plumbing Company. The account with Laing & Scoville was fully settled, and does not enter into this controversy. In April, 1892, L. W. Goode acquired title, by purchase, to the property in question,—a residence property, then having an old house thereon. November 8, 1892, L. W. Goode conveyed said property, by quitclaim deed, for the recited consideration of one dollar, to the defendant E. J. Goode. This deed was filed for record November 10, 1892, and thereafter, on October 21, 1893, E. J. Goode conveyed said property to the defendant Sarah D. Goode for the consideration of eight thousand dollars. After the conveyance to E. J. Goode, L. W. Goode proceeded to remodel the old house according to plans prepared by him and his mother, and contracted with the Scoville Plumbing Company to furnish the materials and do the plumbing in said house according to said plans. As soon as the house was completed, the defendants took possession thereof as their residence. The account of the Scoville Plumbing Company for this labor and materials was kept against L. W. Goode, and on August 31, 1893, a verified statement thereof as against him was filed for a mechanic's lien against said real estate. On May 1, 1895, another verified statement of the same account, as against E. J. Goode and Sarah D. Goode, was filed for a mechanic's lien against the same property. The statement for the lien first filed was assigned to the plaintiff by the Scoville Plumbing Company on the first day of February, 1895, and the second statement was also so assigned on May 1, 1895. The account shows the first item to be of date December 20, 1892, and the last June 2, 1893.

II. We may first notice the contention whether the evidence shows any liability on the part of E. J. Goode. The claim of the defendants is that E. J. Goode, being at that

time without a residence property, and desiring to purchase one, purchased the property in question from L. W. Goode, under an agreement that L. W. Goode would remodel the house according to said plans, as was afterwards done. E. J. Goode states in his deposition that the consideration was eight thousand dollars, and L. W. Goode testified on the trial that it was nine thousand dollars. They both say that the consideration was paid by E. J. Goode assuming a mortgage indebtedness on the property of four thousand dollars, and crediting L. W. Goode, on his indebtedness to him, for the balance. The plaintiff insists that the sale and conveyance to E. J. Goode was a scheme on the part of L. W. Goode to defraud the Scoville Plumbing Company; also, that L. W. Goode was the agent of E. J. Goode in contracting for this plumbing. Counsel say in argument: "We desire at the outset to acquit the venerable father and mother of Lowry W. Goode of any responsibility in devising this ingenious scheme for defrauding the Scoville Plumbing Company." Under the evidence, this concession as to the defendants may well be made, as there is nothing to indicate that the defendants are other than innocent, good-faith purchasers of the property. As we view the testimony, we think it fails to support the claim of fraudulent intention on the part of L. W. Goode. So far as appears, he was then carrying on his business of buying, improving, and selling real estate and had this property for sale. E. J. Goode being at that time without a home, and desirious of securing one, and this property being such as he desired, it was certainly reasonable that L. W. Goode should make the sale that he did, as by it he not only relieved himself from the mortgage indebtedness of four thousand dollars, but received credit for the balance of the consideration on his indebtedness to his father. The Scoville Plumbing Company, with knowledge of the sale and conveyance, contracted with L. W. Goode alone to do this work, as they had done similar work for him theretofore. L. W. Goode may have been insolvent at the time, but, be that as it may, there can be no

doubt that in contracting to do this work the Scoville Plumbing Company did so on the credit of L. W. Goode alone. The facts relied upon as showing a fraudulent purpose upon the part of L. W. Goode are the discrepancy as to the amount of the consideration, the consideration stated in the quitclaim deed, the fact that it was a quit claim deed, and the present insolvency of L. W. Goode. E. J. Goode gave his deposition in the state of New York, and, as he said, in the absence of his books of account. L. W. Goode stated on the trial, with the matter specially called to his attention, that his father was mistaken in stating that the consideration was eight thousand dollars, and that in fact it was nine thousand dollars.

3    We are inclined to believe that on account of the absence of his books, and because of the amount of the consideration not being specially brought to his attention, E. J. Goode was mistaken in stating that it was eight thousand dollars; but, whether or not this is true, it is undisputed that the actual consideration was either eight thousand dollars or nine thousand dollars. Therefore this discrepancy does not show the fraudulent purpose claimed. The consideration named in the deed to E. J. Goode is one dollar, and the deed is in form an ordinary quitclaim deed. L. W. Goode testifies that it was his custom to keep deeds signed by his wife in his office, for convenience of delivery, and that when he came to make out the deed to his father the only form in the office signed by his wife was this quitclaim deed, and, being the only one, he used it. It is argued that it was as easy to write the true consideration in the quitclaim deed as in any other, or to have written one dollar therein. We understand that the one dollar had been previously written in that blank, but, if not, the fact remains undisputed that the real consideration was eight thousand dollars or nine thousand dollars. The giving of such a deed, under the circumstances, was somewhat unusual; but L. W. Goode stands undisputed in his explanation as to why it was done and we see no reason to disbelieve his statements. It is argued that L. W. Goode is at present insolvent, and therefore indifferent as to whether personal

judgment is obtained against him for this work. If this be true, it can only go to the weight of his evidence. It is not a sufficient reason for charging the defendants, or their property, with his debts. As to the claim that L. W. Goode acted as the agent of E. J. Goode, or of Mrs. Goode, in contracting for this plumbing, there is no testimony whatever to support it, while the testimony of the defendants and of L. W. Goode is positive that he was not such agent.

We have examined the evidence as presented in the record with much care, and reach the conclusion that plaintiff's assignor contracted to, and did, furnish the materials and labor charged for on the personal credit of L. W. Goode alone, and with knowledge that this property had been sold and conveyed to E. J. Goode. We are also of the opinion that the contract by which L. W. Goode was to remodel the house at his own expense was a valid and *bona fide* contract. Plaintiff's assignor having not contracted directly or indirectly with E. J. Goode, the owner of the property, for these repairs, it is not, therefore, entitled to charge him or his property therewith. This conclusion finds support in *Mallory v. Waterworks Co.,* 77 Iowa, 715; and *Templin v. Railway Co.,* 73 Iowa, 548.

Other questions are discussed, but as it follows from the conclusions already stated that the decree of the district court must be reversed, and the plaintiff's petition dismissed, they need not be considered. REVERSED.