DONALD GULDBERG, d/b/a HAMPTON HEATING, appellee, v. MORRIS GREENFIELD et ux., appellants.

No. 52135.

874

NOVEMBER 15, 1966.

Lundy, Butler, Wilson & Hall, of Eldora, for appellants.

Whitesell Law Firm, of Iowa Falls, for appellee.

GARFIELD, C. J.—We think the principal question this appeal presents is whether a subcontractor who fails to file his mechanic's lien and bring action to enforce it within the times required by sections 572.9 and 572.27, Codes, 1962, 1966, may recover a personal judgment against the owners, secured by an equitable lien against the property, on a theory of implied contract or unjust enrichment. We hold this may not be done under the record we have here.

Plaintiff is engaged in the plumbing, heating and eave trough business in Hampton. Defendants are husband and wife who owned a lot there on which they planned to build a home. On September 29, 1961, they entered into a written contract with A. E. Clouse of Mason City as contractor to construct the home for $21,471. In early October plaintiff was engaged to install the heating, plumbing and eave troughs under circumstances we will later relate and did as he agreed. Clouse, the principal contractor, got into financial difficulty, did not complete the home, his construction business was dissolved, he moved to California and later took bankruptcy.

On April 25, 1962, plaintiff as subcontractor filed his sworn mechanic's lien, prepared by his attorneys, for his total claim of $3272.47 stating that the items on which it is based were furnished between October 11, 1961, and January 24, 1962. The

statement was of course not filed within 60 days after the last material was furnished and labor·performed as required by Code section 572.9. Nor was action brought to enforce the lien within two years from the expiration of the 60 days as section 572.27 requires.

On October 1, 1964, plaintiff filed his petition in three counts against defendants Greenfield and wife. Count I is based on an alleged oral contract between plaintiff, defendants and Clouse and avers that defendants (Greenfields) agreed to pay for the labor and materials plaintiff furnished "at the prices specified and hereinafter set forth." A copy of the statement (Exhibit A) attached to the mechanic's lien was made part of the petition which alleges it is a true account of the labor, materials and contract price.

Count II of plaintiff's petition is based on the claim defendant husband induced plaintiff to sell to Clouse the materials listed in Exhibit A by fraudulent representation to him on or about October 11, 1961, that Clouse was solvent and in good credit when in fact he was then insolvent. No evidence was offered in support of Count II and nothing is claimed for it here.

After Count III of the petition was twice amended it was stricken and two substitute Counts III were later filed, the last of which was again amended by striking therefrom the allegation that plaintiff placed the improvements upon the real estate at the oral instance and request of defendants. As finally amended Count III alleges that between October 11, 1961, and January 24, 1962, plaintiff placed the improvements upon defendants' real estate as shown by the statement Exhibit A, the improvements were accepted by and beneficial to defendants, the fair and reasonable price of the labor and materials furnished is $3272.47, no part of which has been paid, defendants are unjustly enriched by retaining the materials and labor and should make restitution to plaintiff for the amount claimed.

Each count asks judgment for $3272.47 with interest and costs. The prayers were amended to ask that the described real estate be subjected to the judgment.

Defendants' answer is a denial of the allegations of the petition and an allegation that any contract plaintiff had for fur-

nishing materials and labor for their dwelling was with Clouse, the principal contractor, not with defendants; defendants have paid Clouse all amounts due him and their enjoyment of the materials and labor furnished by plaintiff is not unjust.

Following trial the court found the reasonable value of the materials and labor plaintiff furnished is $3272.47; the primary fact question is whether plaintiff dealt with defendants as contractor or subcontractor; plaintiff and defendant husband were acquainted prior to the time in question; plaintiff did not previously know Clouse; defendant Greenfield did the talking on the first contact between him, Clouse and plaintiff, and called plaintiff to the job on the first two occasions; the two defendants discussed the changes in what plaintiff was to do "and cannot now hide under the subterfuge of an alleged contract between plaintiff and Clouse; the contract for the plumbing, heating and spouting was between plaintiff and defendants and defendants are liable to plaintiff for the reasonable value thereof."

As conclusions of law the trial court held Count I seeks to recover on a contract implied in fact and Count III on a theory of unjust enrichment; the burden of proof on Count I was upon plaintiff; defendants knew of the estimate plaintiff gave Clouse and assented to the existence of the contract between them; even without the assent of defendants a quasi-contractual obligation would be imposed upon them by law to bring about justice, without regard to the intention of the parties; there was no express contract between the parties in question; plaintiff has an equitable lien on the real estate for the amount of his claim; having found for plaintiff on Count I, Counts II and III which seek the same relief were dismissed.

Defendants' counterclaim for alleged slander of title was dismissed on the ground plaintiff did not act maliciously in representing to a prospective purchaser of the property that plaintiff had a lien on it and in procuring the clerk of the district court to enter the present case in his lis pendens docket.

I. Since this is an equity action our review is de novo. Code section 624.4; rule 334, Rules of Civil Procedure. Especially when considering the credibility of witnesses we give weight to the fact findings of the trial court but are not bound

by them. Authorities need not be cited for this nor for the proposition, recognized by the trial court, that plaintiff had the burden to prove by a preponderance of the evidence the causes of action he pleaded. Rule 344(f)(5), (6) and (7), R. C. P.

II. We think plaintiff's Count I declares upon an express oral contract, not on a contract implied in fact, with defendants and Clouse under which plaintiff agreed to furnish the labor and material in question; that subsequently defendants "did agree to pay therefor at the price specified and hereinafter set forth; plaintiff completed said contract * * * and has performed all conditions and agreements thereof; a true account of the labor and materials furnished * * * under said contract and of the contract price is attached hereto marked Exhibit A * * *."

There is no claim plaintiff proved an express oral contract under which defendants agreed to pay him for the labor and material at the contract price. As stated, the trial court found there was no express contract between the parties but that plaintiff was entitled to recover on a contract implied in fact and, even without the assent of defendants necessary for such an implied contract, a quasi-contractual obligation would be imposed on defendants, evidently under Count III although it was dismissed.

A contract is express when the parties show their assent in words. A contract is implied in fact, commonly called an implied contract, when the parties show their assent by acts. A quasi contract or contract implied in law rests upon the equitable principle that one shall not be permitted to unjustly enrich himself at the expense of another or to receive property or benefits without making compensation therefor. See City of Pella v. Fowler, 215 Iowa 90, 96, 244 N.W. 734, 737, and citations; Cassaday v. DeJarnette, 251 Iowa 391, 397, 101 N.W.2d 21, 25; Smith v. Stowell, 256 Iowa 165, 173, 174, 125 N.W.2d 795; 17 Am. Jur.2d, Contracts, section 3.

We have held many times that one who pleads an express oral contract cannot ordinarily recover upon an implied contract or quantum meruit. Maasdam v. Estate of Maasdam, 237 Iowa 877, 884, 24 N.W.2d 316, 320, and citations; Lautenbach v. Meredith, 240 Iowa 166, 168, 35 N.W.2d 870, 871; In re

Trust of Spilka, 250 Iowa 1021, 1027, 97 N.W.2d 625, 628; Christensen v. Iowa State Highway Comm., 252 Iowa 1351, 1353, 110 N.W.2d 573, 575. See also Usgaard v. Silver Crest Golf Club, 256 Iowa 453, 455, 127 N.W.2d 636, 637; 17A C. J. S., Contracts, section 569a, pages 1095, 1096. This rule applies here to plaintiff's right to recover from defendants under Count I. We will later consider plaintiff's right to recover under Count III on a theory of unjust enrichment.

III. We are not content to rest our holding as to Count I on the proposition plaintiff did not plead an implied contract with defendants. We think the proof does not support recovery on the theory of implied contract with them. It is clear there would be no such implied contract if plaintiff's contract was with Clouse as principal contractor and plaintiff furnished the material and labor as a subcontractor under him.

The written contract between defendants and Clouse required him to furnish the gutters and downspouts, plumbing and heating. Clouse had obtained a bid on these items from someone in Mason City engaged in such work. (Clouse lived in Mason City.) Greenfield suggested to Clouse he might want a bid from plaintiff. Accordingly these two went to plaintiff's shop in Hampton. Only Mrs. Guldberg was there. She testified Greenfield introduced her to Clouse as the contractor who would build defendants' new home. She wrote down some preliminary information regarding the plumbing and heating and asked the two men to return later in the day when plaintiff would be there.

Greenfield and Clouse returned to plaintiff's shop around noon when plaintiff was there. Plaintiff testified on direct examination that Greenfield asked if he wanted to figure the plumbing and heating for defendants' new dwelling and he said he did; he was shown the blueprints but no specifications; he obtained the information not supplied by the blueprints from Greenfield; "they" said they would like to have a figure on this as soon as possible; plaintiff said he would have it ready about 2 p.m.; Clouse returned to plaintiff's shop alone about 2 p.m. and plaintiff told him the approximate cost of the job; Clouse said that sounded satisfactory but did not say definitely whether plaintiff had the job.

Plaintiff first testified at the trial he was not aware Clouse was the general contractor. However, from answers to interrogatories previously put to plaintiff by defendants and from his deposition, offered in evidence at the trial, it is quite clear he knew Clouse was the general contractor. Plaintiff admitted Greenfield told him the first time he saw him and Clouse that Clouse was going to take care of all bills on the house. Plaintiff answered yes to the question whether Greenfield told him before he commenced his work that Clouse was the principal contractor and plaintiff would have to get together with him if he wanted to do the work. Plaintiff also gave a similar answer to other questions to like effect, e.g., "Q. You understood Clouse was the general contractor? A. That he was building the house, yes. Q. You understood Clouse was the general contractor? A. Probably."

Plaintiff also testified in his deposition it was Clouse who wanted a price on the plumbing and heating as soon as he could get it; when plaintiff gave Clouse his estimate he did not contact Greenfield before telling him it sounded satisfactory. In answer to a written interrogatory plaintiff said Clouse told him at their 2 p.m. meeting that based on the price plaintiff gave him he (plaintiff) would do the work. Notwithstanding plaintiff's testimony on direct examination that he was shown only the blueprints and no specifications at his meeting with Greenfield and Clouse, he said in answer to a written interrogatory that he and Clouse then went over the plans and blueprints in order to make his estimate of the costs. The only plans other than the blueprints consisted of the "Description of Materials" attached to the principal contract between Greenfield and Clouse.

Both Clouse and Greenfield testified that at their first meeting with plaintiff he was told Clouse was the general contractor; Clouse, not defendant, had the blueprints and specifications for the building, showed them to plaintiff and went over them with him. Clouse testified that at the first meeting he also showed plaintiff the written contract between Clouse and defendants and when plaintiff told him his price he informed plaintiff he could have the job. Greenfield said that when he introduced Clouse to plaintiff he told him he would have to look to Clouse for payment.

As stated, plaintiff admitted substantially this.

Defendants moved into the house about mid-January although it was not then completed. Plaintiff or his wife figured his bill for the job and inquired of Greenfield what they should do about it. Greenfield said to send it to Clouse because he was taking care of all bills. Plaintiff then delivered a statement to Clouse for the amount claimed in this action and later mailed him a second statement. On April 21, 1962, plaintiff or his wife asked Greenfield what he should do to assure payment of his bill and Greenfield said he thought the only thing they could do was to put a lien upon the property. Plaintiff then took his account to his attorneys who prepared the mechanic's lien plaintiff signed under oath that day. As previously indicated, the verified statement recites the items "were furnished by said Claimant who is a subcontractor thereunder." At the trial plaintiff testified the statements in the mechanic's lien are true. Plaintiff never sent or delivered a statement of his account to defendants.

When plaintiff's mechanic's lien was filed on April 25 defendants had paid all but $2400 of the contract price. Liens totaling over $4700 had previously been filed. The first of these was by a Mason City lumber company as subcontractor for $3237.

IV. The trial court's holding there was an implied contract under which plaintiff should have personal judgment against defendants seems to be based in part on three phone calls from Greenfield to plaintiff's shop subsequent to the talks before related and some changes in the work from that first planned. The evidence on these matters need not be recited in detail. We are satisfied it is insufficient basis for a personal judgment against defendants on a theory of implied contract with them.

In the first of the three phone calls Greenfield said water was needed on the jobsite and plaintiff was asked to hook up the existing water line for pouring cement footings. In the second call defendant asked plaintiff to lay the drainage lines in the excavated part of the basement before the cement floor was poured. In the remaining call Greenfield said the heating pipes had to be installed before the workmen could finish "dropping"

the ceiling. These calls were simply to advise plaintiff that construction had progressed to the point where the plumbing or heating work referred to should be done. There is no claim plaintiff had not previously agreed to do all the work referred to in the three calls. There was probably no phone at the jobsite. Defendants lived only a block away and were naturally and properly interested in the progress of the work. The principal contract called for completion ready for occupancy by December 1.

Much is claimed for what is said to be a change by defendants in the color of bathroom fixtures during progress of the work. The description of materials attached to the principal contract specified the color was to be yellow in one bathroom, turquoise in another and white in the third (basement) bath. Plaintiff testified that in figuring the price quoted by him he understood all white fixtures of good quality were to be used. When it was time to order the fixtures plaintiff asked defendants to select the colors they wanted from a color chart. Mrs. Greenfield testified that since no sample of turquoise color was shown them they selected a shade of blue as the color nearest to turquoise they could get and that Clouse participated in this decision. We find no contradiction of this.

There is evidence of other changes as the work progressed, e.g., in the location and arrangement of the basement bath. Clouse said in answer to written cross-interrogatories offered in evidence by plaintiff that he explained to plaintiff at their first meeting the changes in this bath and it was built as originally planned and explained to plaintiff. Nearly all the claimed changes were talked over and agreed to by plaintiff's foreman, the man in charge of the work for Clouse and Greenfield. So far as shown, Mrs. Greenfield took part only in the selection of color of bath fixtures and the matter of a shower door for one of the baths. Neither plaintiff nor Clouse seems to have done much if any actual construction work.

It appears the changes agreed upon during progress of the work by plaintiff's employees were not unusual or wholly unexpected. Plaintiff testified he knew there would be some changes in construction: "Ordinarily in this type of job we try to do as

much as possible what the customer wants because he is going to live in it and we want him satisfied. * * * We have a policy of getting in touch with customers to make sure any changes are satisfactory * * * whether our firm is a contractor or subcontractor, if the owner is readily available."

Mr. Meints, plaintiff's foreman, testified in substance that such changes as were made in arrangement of the basement bath were always talked over with the customer; "It is not unusual to have changes on a building such as this as it progresses. * * * In my oral deposition I stated the number of changes or extras on this house was close to average." This witness also gave testimony similar to that of plaintiff quoted in the preceding paragraph.

V.   17 C. J. S., Contracts (1963), section 4c, page 564, accurately states the law applicable to plaintiff's right to recover from defendants on the theory of implied contract:

"Thus, where one at the request of the owner performs work and labor in constructing or repairing, without an express agreement for compensation, the law implies a promise on the part of the owner to make a reasonable compensation therefor, and it has been held that where one stands by in silence and sees work done in the improvement of his premises, of which he accepts the benefit, a promise to pay therefor may be implied.

"Where, however, the contractor sublets his contract, the law will not imply any agreement on the part of the owner to compensate the subcontractor for the work and labor performed by him; the implied obligation of the owner to make compensation to one who performs work and labor in the improvement of his property is taken away by the special contract between the contractor and the subcontractor."

Precedents which support the text include Walker v. Brown, 28 Ill. 378, 383, 81 Am. Dec. 287; Tibbetts Contracting Corp. v. O & E Contracting Co., 15 N. Y.2d 324, 258 N. Y. S.2d 400, 206 N.E.2d 340, 343, 344; Conti v. Johnson, 91 Vt. 467, 100 A. 874, 876.

VI.   Another rule is also fatal to plaintiff's right to a personal judgment against defendants. 36 Am. Jur., Mechanic's Liens, section 284, states: "In the absence of special statutory

rights and remedies, a subcontractor or materialman has no right to a personal judgment against the owner where there was no contractual relation between them." Under the factual situation here there is no statute which entitles plaintiff to a personal judgment for the sum claimed.

See in support of the quoted text Builders Supply Depot v. O'Connor, 150 Cal. 265, 88 P. 982, 17 L. R. A., N. S., 909, 911, 119 Am. St. Rep. 193, 11 Ann. Cas. 712; Lundstrom Construction Co. v. Dygert, 254 Minn. 224, 94 N.W.2d 527, 533; Alberti v. Moore, 20 Okla. 78, 93 P. 543, 14 L. R. A., N. S., 1036, 1041 and note 1036; Augir v. Warder, 68 W. Va. 752, 70 S.E. 719, 33 L. R. A., N. S., 69, 70; Ponti v. Eckels, 129 Wis. 26, 108 N.W. 62, 63. See also Vreeland v. Ellsworth, 71 Iowa 347, 350, 32 N.W. 374; Page & Son v. Grant, 127 Iowa 249, 252, 257, 103 N.W. 124.

The note in 14 L. R. A., N. S., 1036, supra, says in effect the courts seem unanimous in applying the rule above quoted from 36 Am. Jur., Mechanic's Liens, section 284. The note also points out that several decisions give as a reason for the above rule that there is no privity of contract between the owner and subcontractor. See also George v. Hall, Tex. Civ. App., 371 S.W.2d 874, 876; Steigleder & Son v. Allen, 113 Va. 686, 75 S.E. 191, 192; Coleman v. Pearman, 159 Va. 72, 165 S.E. 371, 372.

It is also said that an owner should not be compelled to pay the same sum twice, once to the general contractor and again to one with whom the owner has no contract relation and who has not complied with the mechanic's lien law. Coleman v. Pearman, supra.

█ That certain changes in the work of the subcontractor or extras that are agreed to by him, the contractor and owner do not make the former a principal contractor with the owner, see McGinnis v. Milhollin, 64 Ga. App. 462, 13 S.E.2d 591, 592.

VII.   As previously explained, Count III of plaintiff's petition asks a personal judgment against defendants on the theory of unjust enrichment. Although the trial court dismissed this count he indicated recovery would have been allowed thereunder if judgment had not been entered under Count I. Plaintiff argues here, as he may, that he is entitled to recover under Count III. We must disagree with this argument.

The precise scope of the doctrine of unjust enrichment need not be discussed. As indicated in Division II hereof, "restitution" and "unjust enrichment" are modern designations for the older terms of quasi contracts or contracts implied in law. Smith v. Stowell, supra, 256 Iowa 165, 173, 174, 125 N.W.2d 795, 799, 800, and citations; Schildberg Rock Products Co. v. Brooks, 258 Iowa 759, 770, 140 N.W.2d 132, 138, 139.

██  If our conclusion is sound that plaintiff was a subcontractor under Clouse and furnished the material and labor in performance of his subcontract, any benefits plaintiff conferred upon defendants do not justify recovery from them on the theory Count III asserts. Plaintiff's predicament stems from Clouse's failure to pay him as agreed. Plaintiff was entitled to the benefits of the mechanic's lien law but failed to avail himself thereof. Defendants paid Clouse all that was owing him under the principal contract and in all have paid out considerably more, in completing the house and satisfying mechanic's liens that were timely filed, than the contract called for.

Our conclusion is supported by Pay-N-Taket, Inc. v. Crooks, 259 Iowa 719, 724, 145 N.W.2d 621, 625; Walker v. Brown, supra, 28 Ill. 378, 385, 386, 81 Am. Dec. 287; Conti v. Johnson, 91 Vt. 467, 100 A. 874, 876; 17 C. J. S., Contracts, section 6, pages 573, 574.

Restatement, Restitution, section 110, states: "A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person."

Our reversal of the judgment against defendants for the amount of plaintiff's account of course carries with it the provision of the decree that plaintiff has a lien against the property for the amount of the judgment.

VIII.  There remains the matter of defendants' counterclaim asking actual and exemplary damages for alleged slander of title in plaintiff's telling others that he had a lien on the property and in his attorney's causing the clerk of court to enter this action on his lis pendens docket. There is evidence that because of these statements Juncker, who purchased the property, with-

886

held $4000 of the purchase price, with consequent loss of interest thereon. As before explained, the counterclaim was dismissed on the ground plaintiff and his attorney did not act maliciously in the matters complained of. We are inclined to affirm this holding.

██ ██ One of the essential elements of an action for slander of title is that the words must be uttered maliciously. Witmer v. Valley National Bank, 223 Iowa 671, 673, 273 N.W. 370, and citations; Annotation, 129 A. L. R. 179. The burden was upon defendants to prove this essential element by a preponderance of the evidence. The trial court's finding malice was not shown is entitled to weight. Plaintiff had filed a mechanic's lien against the property and, so far as shown, did not know it was outlawed. If he made the statements in good faith they were not slanderous.

The entry in the lis pendens docket added little to the entry in the mechanic's lien book in the clerk's office. The clerk testified he does not ordinarily enter a lien in the lis pendens record that is shown in some other lien record in his office. It is not clear Juncker would not have withheld the $4000 if the additional entry in lis pendens had not been made.

The judgment in favor of plaintiff except as to defendant's counterclaim is reversed and the cause is remanded for judgment pursuant to this opinion. Three fourths the costs in this court are taxed to plaintiff, one fourth to defendants.—Reversed and remanded.

All JUSTICES concur except THORNTON, J., not sitting.