CLEMENS GRAF DROSTE ZU VISCHERING, Appellant,

v.

Rick KADING, d/b/a Little Kading Construction, One Trip Plumbing & Heating Co., Inc., Allied Construction Services, Inc., Baker Electric, Inc., Appellees,

and

National Sheet Metal Co., Inc., Rainbow Irrigation Inc., Louie's Floor Covering, Inc., Wood Roofing Co., Inc., Wood Sheet Metal Co., Inc., R.D. Guzeman, Paul E. Beech and the West Palms, Inc., Defendants.

No. 83–1616.

Supreme Court of Iowa.

May 22, 1985.

James E. Gritzner of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for appellee Rick Kading d/b/a Little Kading Const.

Joseph B. Joyce of Adler, Brennan, Joyce & Steger, Des Moines, for appellee One Trip Plumbing & Heating Co., Inc.

Roger T. Stetson and Dennis J. Nagel of Belin, Harris, Helmick, Heartney & Tesdell, Des Moines, for appellee Baker Elec., Inc.

F. Richard Lyford, Barbara G. Barrett, and Charles F. Becker of Dickinson, Throckmorton, Parker, Mannheimer &

Raife, Des Moines, for appellee Allied Const. Services, Inc.

Robert G. Riley and Hugh J. Cain of Duncan, Jones, Riley & Finley, Des Moines, for appellant.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, CARTER, and WOLLE, JJ.

WOLLE, Justice.

In our de novo review of this complex quiet title action we must decide whether and to what extent several contractors may enforce mechanic's liens filed in connection with their remodeling of portions of a commercial building in West Des Moines known as One Corporate Place (the building). While the building was being remodeled for use by commercial tenants, its contract purchaser R. Dean Guzeman (Guzeman) first entered into an agreement to sell and then conveyed his interest to Clemens Graf Droste Zu Vischering (Droste), a West German entrepreneur. The contractors performed work and supplied materials for remodeling the building pursuant to contracts with Guzeman. Droste commenced this action to quiet title, and the contractors counterclaimed to enforce their mechanic's liens. The trial court allowed all of the contractors to enforce their mechanic's liens against the building, although not awarding the full amount of one lien, and it awarded the contractors reasonable attorney fees. The trial court then quieted title in Droste subject to the liens. We affirm in part and reverse in part, agreeing that title should be quieted in Droste but finding that only a portion of one contractor's lien may be enforced against the property.

▮▮▮▮ Quiet title actions and actions to enforce mechanic's liens are equitable proceedings which we review de novo. *Kendall v. Lowther*, 356 N.W.2d 181, 183 (Iowa 1984); *Ringland-Johnson-Crowley Co. v. First Central Service Corp.*, 255 N.W.2d 149, 151 (Iowa 1977); *see* Iowa Code § 572.26 (1983). We examine the whole record and determine the parties' rights anew from the evidence presented. *Northwestern National Bank v. Metro Center, Inc.*, 303 N.W.2d 395, 397 (Iowa 1981). While giving weight to the fact findings of the trial court, especially when considering the credibility of witnesses, we are not bound by those findings. Iowa R.App.P. 14(f)(7).

I. *Background Facts.*

A. *Ownership of the Building.* Guzeman obtained his ownership interest in the building on July 1, 1980, by entering into an installment contract with Midwest Mutual Insurance Co. (Midwest), its legal title holder. Guzeman intended to syndicate the building, but his plans were waylaid by an unfavorable economic climate and personal financial setbacks. On March 5, 1981, Guzeman entered into an agreement to sell the property to Droste. That purchase agreement, as subsequently amended prior to Guzeman's conveyance of the property to Droste, required Guzeman to have the building fully rented, with leases that met Droste's approval.

Several leases of commercial space could only be signed if Guzeman were to make substantial improvements in the space the tenants were to occupy, and it is that remodeling that triggered the subsequent filing of several of the mechanic's liens here involved. Xerox Corporation (Xerox), originally a major upper-floor tenant, entered into a written lease with Guzeman for occupancy of the first and second floors, and on January 28, 1981, Guzeman contracted with Allied Construction Services, Inc. (Allied) to construct Xerox's improvements on a cost-plus basis. Later in 1981, Guzeman leased the fifth floor of the building to West Palms, Inc. (West Palms) for use as a private club and restaurant. That lease specifically provided that Guzeman and West Palms would hold Droste harmless from any expense related to the necessary remodeling of that space. One Trip Plumbing & Heating Co., Inc. (One Trip), Rick Kading doing business as Kading Construction (Kading), and Baker Electric, Inc. (Baker) all performed remodeling work on that West Palms leasehold, with the work

arranged for by Guzeman after he had conveyed his interest in the building to Droste.

The amended purchase agreement for sale of the entire building gave Droste the option of requiring Guzeman to furnish mechanic's lien waivers before closing the sale. The purchase agreement also allowed Droste to postpone the closing date or even rescind the purchase agreement if Guzeman did not complete satisfactory leasing arrangements and satisfy his other contract obligations.

Closing of the sale took place on November 24, 1981. Midwest conveyed its interest in the real estate by warranty deed to Droste, and that deed was duly recorded on November 25, 1981. Guzeman simultaneously assigned his interest in the building to Droste and also furnished Droste an "affidavit of inducement" by which funds were to be escrowed for the satisfaction of mechanic's liens and rental obligations. The escrowed funds proved insufficient to cover all work performed before and after the closing.

Although the assignment and affidavit of inducement were not recorded, the deed which was recorded made specific reference to the contract with the following language:

This deed is given in compliance with a contract between Grantor and R. Dean Guzeman, dated the 14th day of May 1980 and recorded in Book 5023, Page 376 in the office of the Polk County, Iowa Recorder, on July 1, 1980, the same having been assigned by Guzeman to Clemens Graf Droste Zu Vischering; the warranties herein contained extend to the date of said contract, and thereafter only as to those persons claiming by, through, or under Grantor.

Consequently, on November 25, 1981, the day after the closing of the sale to Droste, title to the property appeared as follows, subject to unrecorded commercial leases:

CHAIN OF TITLE

_____ recorded instrument

- - - - - - - - - - unrecorded instrument

---

B. *Work Performed by the Contractors Before the Closing.* All of the remodeling work performed by the defendant contractors on the building was undertaken pursuant to contractual arrangements made with Guzeman, not Droste. Before the closing, Allied had performed substantial work on the Xerox leasehold and several other parts of the building, while Kading and Baker had also performed work for Guzeman within the building.

Kading filed a mechanic's lien on October 8, 1981 covering work completed about a month earlier in several parts of the building. That lien was released when Kading was paid at the time of the closing, and the work Kading performed thereafter on the West Palms leasehold was separately invoiced and the subject of its liens filed in 1982.

Baker also performed work before the closing, repairing air-handling equipment in the early fall of 1981 and then remodeling portions of the building's fourth floor in November and early December of 1981. Guzeman had arranged for that work before the closing, and it was separately invoiced. Guzeman was billed $509.37 for the intitial work and $4,161.91 for work on the fourth floor, and Droste has admitted liability for that work undertaken by Guzeman while he was still an owner of the building. Baker is entitled to have its mechanic's liens enforced in those undisputed amounts totaling $4,671.28, with interest at the agreed rate of 18% per annum from March 24, 1982, through June 23, 1982, and

10% from June 23, 1982, the date of its counterclaim.

C. *Work Performed by the Contractors After the Closing.* After the closing, Allied continued to perform substantial remodeling work on the Xerox leasehold, remodeling the first two floors of the building which Guzeman had leased to Xerox. That work was done on a cost-plus basis pursuant to contractual arrangements made with Guzeman. In October of 1981 Allied had filed a mechanic's lien covering work it performed commencing on July 7, 1981. Allied was paid for that work and released its lien at the time Guzeman conveyed the building to Droste. After the closing Allied continued remodeling the Xerox premises, and on March 23, 1982 it filed its mechanic's lien for $70,321.03 covering that additional work. That second lien is the subject of Allied's counterclaim in this action. Droste had already contracted with Guzeman to purchase the building when Allied commenced its work, and consequently both Droste and Guzeman were then owners within the meaning of the Iowa mechanic's lien statute. Iowa Code § 572.1(1) (1981); *Veale Lumber Co. v. Brown*, 197 Iowa 240, 243, 195 N.W. 248, 250 (1923). The principal issue relating to Allied's claim is whether it took collateral security from Guzeman which extinguished its lien, as provided in Iowa Code section 572.1(3) (1981).

One Trip commenced its work remodeling the West Palms leasehold pursuant to contractual arrangements made with Guzeman in early December of 1981. Although One Trip filed a plumbing permit application listing Guzeman as the owner of the building, the parties agree that Guzeman did not represent himself as the owner in making arrangements with One Trip to perform the remodeling. One Trip filed a mechanic's lien on March 18, 1982, naming Guzeman as the owner and refiled on May 3, 1982, naming Droste as the owner. Its lien for $10,865 covered work performed between December 17, 1981 and February 11, 1982.

Kading's proposal to perform remodeling work on the West Palms leasehold was accepted by Guzeman on December 3, 1981, and Kading completed that work on January 15, 1982. Kading filed two separate mechanic's liens, one on February 8, 1981 for $34,800 and another on April 19, 1982 for $12,500. Both liens showed Droste to be the owner, and the first lien noted as well that the work was performed pursuant to a contract with Guzeman, "former owner and agent for the current owner Droste."

Baker made separate arrangements with Guzeman for performing remodeling work on the West Palms leasehold, even though Baker had performed work before the closing on other parts of the building. Baker filed a mechanic's lien dated March 24, 1982, which covered both work performed prior to the closing and work undertaken after the closing and completed on March 2, 1982.

We first address the claims of One Trip, Kading, and Baker that they may enforce against Droste their mechanic's liens based on contractual arrangements made after the closing, then the separate contention of Kading and Baker who performed work before Guzeman conveyed his interest in the building to Droste. Finally, we will address the Allied claim, specifically deciding whether Allied mechanic's lien for work performed on the Xerox leasehold was extinguished by its taking of collateral security on its contract with Guzeman.

II. *Enforceability of Liens Based on Post-Conveyance Contracts.*

The law governing mechanic's liens is rooted in statute, for the common law provided no such protection for persons who improve real property. G. Madsen, Marshall's Iowa Title Opinions and Standards § 11.1(J), at 231 (2d ed. 1978). Iowa Code chapter 572 (1981) governs the contractors' mechanic's lien claims. Sections 572.1 and .3 are directly applicable to the claims based on contractual arrangements which post-dated Guzeman's conveyance of the building to Droste. Section 572.2 requires a mechanic's lien claimant to show

that the material supplied or labor furnished be "by virtue of any contract with the owner, his agent, trustee, contractor, or subcontractor," and section 572.1(1) defines "owner" as "every person for whose use or benefit any building, erection, or other improvement is made, having the capacity to contract, including guardians." Fundamental to establishment of a mechanic's lien on property is proof of such an express or implied contractual arrangement binding the person then possessing such an ownership interest. Stone, *Mechanic's Liens in Iowa*, 30 Drake L.Rev. 39, 52–53 (1981).

 One Trip, Kading, and Baker all arranged directly with Guzeman, not with Droste, to improve the West Palms leasehold to make it ready for use as a restaurant. Guzeman made these written and oral express contractual arrangements after the recording on November 25, 1981, of the deed conveying the building to Droste. None of those contracts provided the basis for a mechanic's lien because the evidence establishes: (A) Guzeman was not then an owner of the building; (B) Guzeman was not then an agent of Droste; and (C) the remodeling work was performed in accordance with express contracts with Guzeman, not under circumstances that would support the contractors' implied contract claims against Droste based on a theory of unjust enrichment.

A. *Guzeman Was Not an Owner.* One ground on which the trial court allowed One Trip, Kading and Baker to enforce mechanic's liens for work undertaken after Guzeman deeded the building to Droste, was that they could reasonably consider Guzeman still to be an owner. The trial court emphasized that the contractors had little knowledge about the conveyance and were not told that it cut off their lien rights. The trial court concluded that "Droste deliberately obfuscated the record title to the property" by failing to record all documents executed by Guzeman at the time of the conveyance, "leaving title obscurely held by both Droste and Guzeman during the period of time the lien claimants

performed work and supplied materials to the property."

 The record does not support that conclusion. Droste's deed recorded on November 25, 1981 specifically made reference to Guzeman's assignment to Droste of his contract to purchase the building from Midwest Mutual. These contractors, and the world, were given notice by that recording that Guzeman no longer had any ownership interest in the building. Contractors have constructive notice of all information contained in recorded documents and have a duty of inquiry concerning circumstances disclosed in those records.

As stated in 2 Patton on Titles § 604, at 554–55 (2d ed. 1957):

> A purchaser is charged with constructive notice of anything appearing in any part of the deeds or instruments forming the chain of title, or in the certificates of acknowledgment thereof, which is of such a nature that it would amount to actual notice, if brought directly to his knowledge. Familiar instances are recitals that the property conveyed is subject to a contract or a mortgage; the purchaser is thus charged with notice, though the instruments referred to are not of record.

Iowa law adopts this view of constructive notice from recording of documents of title. In *Loser v. Savings Bank,* 149 Iowa 672, 128 N.W. 1101 (1910), the court stated:

> It may, however, be taken as well settled that an instrument properly made of record is notice to the world not only of the facts and claims therein expressly set forth, but also of all other material facts which an inquiry thereby reasonably suggested would have developed....

*Id.* at 676, 128 N.W. at 1103.

These contractors contend, and the trial court emphasized, that neither Guzeman nor Droste told them about the sale so they could protect themselves. The trial court found:

> The contractors knew Droste's agent James Thomas was aware of the ongoing work and offered no objection. The con-

tractors knew the improvements were necessary for the operation of businesses to be tenants of the building. The contractors were unaware of any contractual arrangements between Guzeman, Droste and West Palms. Nothing in this record indicates the contractors should have known they could not look to the building to protect their charges for labor and materials.

The recorded deed, however, gave these contractors all the notice that the law requires. It put them on constructive notice that Guzeman no longer had such a beneficial interest of record as would support a mechanic's lien against the property.

■ The contractors argue that Guzeman should be treated as an owner even after he conveyed his title to Droste, because he was required to make the improvements in order to satisfy his obligations under his contract to sell the property to Droste. They contend that Guzeman was therefore an "owner" within the statutory definition, "every person for whose use or benefit any building, erection, or other improvement is made...." That argument, though ingenious, cannot be squared with what our court said and held in *Society Linnea v. Wilbois*, 253 Iowa 953, 113 N.W.2d 603 (1962):

> Some beneficial ownership in real property by one who receives the benefit of labor and material under a contract, express or implied, has always been a necessary element to the establishment of a mechanic's lien in Iowa. (citing authorities.)

> While it is true we have found the various beneficial interests in real property sufficient to support a lien, and have been generous at times in finding an implied contract between an "owner" and a materialman, we have never it seems established a lien without some contract or agreement express or implied with one presently possessed with such an interest.

*Id.* at 958–59, 113 N.W.2d at 606. The remodeling improvements benefited Droste but not Guzeman. To Guzeman the remodeling project constituted not a benefit but an obligation which Guzeman was required to satisfy as part of his sale of the property to Droste. The definition of "owner" cannot be expanded to include persons who have no present beneficial interest in the property. After he conveyed his interest in the building to Droste, Guzeman was not an "owner" within the meaning of our mechanic's lien statute.

■ B. *Guzeman Was Not Droste's Agent.* The trial court also predicated its enforcement of these contractors' liens on its finding that Guzeman was Droste's "agent" in remodeling the building after the conveyance. The statute does permit enforcement of a mechanic's lien against an owner whose "agent" has made a contract with a contractor. Iowa Code § 572.2 (1981). The evidence here, however, shows that Guzeman acted on his own and did not have authority, actual or apparent, to act as Droste's agent.

■ Guzeman never told these contractors that he was acting for Droste or anyone other than himself in arranging for work to be performed on the building. Neither did Droste. Moreover, Droste never gave Guzeman actual authority to act for and bind him for the remodeling work. The contractors contend that Droste manifested his consent to the agency in the sale documents, but the Droste-Guzeman contract, as well as the West Palms lease, as amended, explicitly provided that Droste would not be responsible for payment for the remodeling work and that Guzeman and West Palms would indemnify Droste from any responsibility for the required improvements. The evidence shows that Guzeman acted in his own name alone and not for Droste in arranging for performance of this remodeling work.

■ For an agency relationship to exist, the principal must manifest to the agent that it may act on the principal's behalf, and the agent must consent so to act. Restatement (Second) Agency § 15 (1958). A case clearly illustrating this principle is *Brown v. Schmitz*, 237 Iowa 418, 22

N.W.2d 340 (1946). The plaintiff sold cattle to one Mead, but his check bounced. Plaintiffs contended that Mead was the defendants' agent because defendants had previously guaranteed other checks Mead had given in purchasing cattle. In deciding that no agency relationship had been established, our court first paraphrased the Restatement definition of agency, then held:

> There is no competent evidence that Mead purported to act as defendants' agent. In buying and selling the cattle Mead was acting for himself. He made all purchases in his own name. . . . The evidence shows no manifestation of consent by defendants that Mead should act on their behalf and subject to their control, nor consent by Mead so to act. This is the test of agency.

*Id.* at 427–28, 22 N.W.2d at 345.

Neither does the evidence support the trial court's finding that "Guzeman was cloaked with apparent authority to act as agent for Droste in negotiations for labor and material supplied by Kading, Baker and One Trip." For apparent authority to exist, the principal must have acted in such a manner as to lead persons dealing with the agent to believe the agent has authority. *State v. Sellers,* 258 N.W.2d 292, 297 (Iowa 1977); *Spencer Concrete Products Co. v. City of Spencer,* 254 Iowa 87, 116 N.W.2d 455 (1962):

> Apparent authority, as between the principal and third persons, must be determined by what the principal said and did rather than by the acts or statements of the purported agent.

*Id.* at 95–96, 116 N.W.2d at 460; *see* Restatement (Second) Agency § 27 (1958).

These contractors made contractual arrangements with Guzeman acting in his own interest, not with Guzeman acting or appearing to act for Droste. Several instructive Iowa cases have rejected claims based on an agency theory when the purported agent entered into the contract in the person's own name and not for another. In *Young v. Inman & Nelson,* 146 Iowa 492, 125 N.W. 177 (1910), the court reversed a judgment holding a wife liable on a contract for ditch digging which her husband had entered into for himself alone, saying:

> But where a contract is made with an agent in his own name and apparently upon his own responsibility, an actual agency must exist before his principal may be held liable.

*Id.* at 495, 125 N.W. at 179. Similarly, in *Reese Gabriel & Co. v. Cornell,* 172 Iowa 734, 154 N.W. 1002 (1915), the husband of the owner contracted to build a home on her lot, but a supplier of lumber was not paid and attempted to enforce a lien against the wife's property. Even though the wife received full benefit of the improvement, the court refused to impose a lien on the property, stating:

> [I]f Cornell contracted in his own behalf for the erection of the house and the contractor dealt with him with that understanding, Mrs. Cornell, the owner of the realty on which the house was erected, is not thereby rendered liable to the contractor or subcontractors, even though he might have bound her by contract in her behalf had he been so disposed, or even though she may have contributed something thereto, as the old house, toward the enterprise.

172 Iowa at 737, 154 N.W. at 1004. Applying the same reasoning here, the contractual arrangements Guzeman made with these contractors were on his own account, and Droste is not bound by those arrangements nor liable to them on a contract theory.

There is neither legal nor factual support for these contractors' contention that Guzeman was Droste's agent.

C. *The Liens Are Not Enforceable On A Theory of Implied Contract And Unjust Enrichment.* The trial court gave an additional reason for enforcing the mechanic's liens of these contractors:

> Justice in this case requires that the liens of Kading, Baker and One Trip be upheld. Droste cannot complain about this result because he had the opportunity to alleviate the problem by requesting lien waivers from these defendants.

. . . .

In addition to the other findings herein, the Court finds Droste would be unjustly enriched if he were to escape payment for the labor and materials supplied for his benefit and with his knowledge.

██ Our refusal to uphold these mechanic's liens is not inherently unfair even though the contractors were not told that Guzeman was no longer an owner when they entered into contractual arrangements with him. The contractors had constructive notice from the recorded documents that he was not an owner.

The contractors have not cited persuasive authority for rooting their mechanic's liens in a theory of implied contract based on the doctrine of unjust enrichment. Neither have they distinguished the several Iowa cases that are contrary to their position. Our court has refused to enforce mechanic's liens when the contractor has performed work pursuant to an express contract with someone not the owner of the property, as did these contractors.

██ The law will not imply a contract where there is an express contract. In *Guldberg v. Greenfield*, 259 Iowa 873, 146 N.W.2d 298 (1966), the plaintiffs supplied materials for building of defendant's house pursuant to a contractual arrangement with defendant's home builder, then sought to enforce a mechanic's lien against the owner on a theory of implied contract based on unjust enrichment. Our court reversed a judgment entered for plaintiff, stating:

> A contract is express when the parties show their assent in words. A contract is implied in fact, commonly called an implied contract, when the parties show their assent by acts. A quasi contract or contract implied in law rests upon the equitable principle that one shall not be permitted to unjustly enrich himself at the expense of another or to receive property or benefits without making compensation therefor. (Citations omitted).

We have held many times that one who pleads an express oral contract cannot ordinarily recover under an implied contract or quantum meruit.

259 Iowa at 878, 146 N.W.2d at 301. Other Iowa cases have explained that an express contract and an implied contract cannot coexist with respect to the same subject matter; the express contract supersedes the implied contract with respect to its terms. *See Maasdam v. Estate of Maasdam*, 237 Iowa 877, 887, 24 N.W.2d 316, 321 (1946).

Another case quite similar in its facts to this one is *Des Moines Savings Bank v. Goode*, 106 Iowa 568, 76 N.W. 825 (1898). There, the court refused to enforce a mechanic's lien for work performed in renovation of a house based on a contract entered into with a person who had already conveyed the house to other persons. The court held:

> Plaintiff's assignor having not contracted directly or indirectly with E.J. Goode, the owner of the property, for these repairs, it is not, therefore, entitled to charge him or his property therewith. (Citing supporting authorities.)

*Id.* at 573, 76 N.W. at 826.

██ Guzeman was not the owner and was not an agent acting for the owner when he contracted to have One Trip, Kading and Baker improve the premises he had conveyed to Droste. Neither on an express nor implied contract theory may these contractors enforce their mechanic's liens against Droste's property or obtain a personal judgment against him.

III. *Enforceability of Liens Based on Pre-Conveyance Contracts.*

Both Baker and Kading entered into contractual arrangements with Guzeman and performed some work on the building before the closing of the Guzeman-Droste contract and conveyance, so both stand in a somewhat different position than One Trip which arranged to perform work on the building only after the closing. Baker and Kading attempt to tack together and treat as a single project their remodeling work on the other parts of the building performed before the conveyance, with the

West Palms remodeling work arranged for and performed after the conveyance.

The trial court did not specifically address the question whether their work arose from a single contractual undertaking, but its findings of fact suggest otherwise. It found that on November 25, 1981, Kading discharged its lien for work performed before the closing, because Guzeman paid for that work. It found that Baker had performed work on the lower floors of the building before the closing, and then found:

> Guzeman suggested that Baker do the electrical work for the fifth floor remodeling project. Baker agreed to do the work on a cost plus 20 percent basis. This was the same basis under which Baker had done previous work for Guzeman at One Corporate Place. Baker commenced work on the fifth floor project on or about December 8, 1981.

In *Casler Electric Co. v. Carlsen*, 249 Iowa 289, 295, 86 N.W.2d 682, 686 (1957), we held in accordance with substantial supporting authority that work performed under separate contracts—one as contractor and one as subcontractor—could not be joined together to extend the time for filing mechanic's liens.

We later applied the same rationale in deciding a slightly different issue in *Society Linnea v. Wilbois*, 253 Iowa 953, 113 N.W.2d 603 (1962). There, a contractor had performed some plumbing inspection work on real estate for Wilbois before he acquired an ownership interest, then later performed work for the owner and attempted to combine the projects so the lien would predate a mortgage. We held:

> The same rule [as in *Casler*] applied here, and defendant cannot be permitted to join these two work agreements to establish an earlier date of commencement for his plumbing and heating work rendered later. The date of commencement for mechanic's lien purposes obviously was [the later date] and was not prior to plaintiff's mortgage liens.

253 Iowa at 956, 113 N.W.2d at 605. The work that Kading and Baker performed on the West Palms leasehold located on the fifth floor of the building resulted from contractual arrangements that were separate and distinct from the earlier remodeling work. Neither Kading nor Baker is entitled to join separate contractual undertakings for the purpose of showing that Guzeman was an owner when he contracted for the West Palms remodeling work after the Guzeman-Droste conveyance.

III. *Did Allied Take Collateral and Thereby Lose Its Lien?*

By its counterclaim Allied sought to enforce the mechanic's lien for $70,321.03 which it filed on March 23, 1982, covering work performed both before and after the closing to remodel the space Guzeman had leased to Xerox. Allied performed that work pursuant to a cost-plus contract entered into with Guzeman in early 1981. Droste by affirmative defense contended that Allied had taken collateral security on its contract with Guzeman, which extinguished Allied's lien rights. Iowa Code section 572.3 (1981) provides:

> No person shall be entitled to a mechanic's lien who, at the time of making a contract for furnishing material or performing labor, or during the progress of the work, shall take any collateral security on such contract.

During the course of pretrial discovery Droste uncovered in Allied's own files most of the facts by which it supported this statutory defense. In our de novo review of the record, we conclude that Droste established its defense by a preponderance of the evidence.

In early 1981, Guzeman approached Robert L. Maddox (Maddox), the president and principal owner of Allied, concerning the possibility that Allied or Maddox would invest in a limited partnership known as "1901 Partners" of which Guzeman was a general partner. At that time the sole asset of that partnership was a commercial building located at 1901 East University in Des Moines. Maddox purchased five interests in that partnership.

After Allied had performed much of the remodeling work on the Xerox leasehold, it recognized that Guzeman was having trouble paying his bills. On October 28, 1981, Allied filed a mechanic's lien in the sum of $271,735.82 for work then completed. Thereafter, Allied's executive vice president Richard B. Brown (Brown) arranged with Guzeman for payment and release of that mechanic's lien in order that the Guzeman-Droste closing could be completed. At about the same time, Brown extracted from Guzeman an agreement that he would provide to Allied two remaining shares in the limited partnership as additional collateral for a portion of the work which Allied was in the process of performing on the Xerox leasehold. Guzeman gave Allied at that time a written statement which provided in pertinent part that he would secure the balance due and owing to Allied, including uncompleted work, by issuing to Allied a secured note with bona fide collateral, the collateral "to be two remaining shares of 1901 East University in Des Moines."

In December of 1981 Maddox requested and received from Guzeman and his attorney a security agreement and accompanying financing statement covering the two limited partnership units in that partnership. The partnership's records, including its income tax returns and accountant's work sheets for 1981 and 1982, show that by early 1982 those two partnership shares had been transferred to Allied and then to its principal owner Maddox. This allowed Maddox to reduce his personal income tax liability by the amount of depreciation, interest, and other allowable deductions reflected on the partnership income tax returns. Droste thus established, primarily from documentary evidence, that before Allied had finished working on the project it had demanded and received from Guzeman the two additional units in the limited partnership which were covered by Guzeman's written promise, security agreement and financing statement given to Allied.

The trial court enforced Allied's mechanic's lien in an amount supported by the evidence, finding that the two partnership shares did not constitute collateral security within the meaning of section 572.3. The trial court gave several reasons for rejecting Droste's statutory defense. It found that Guzeman did not give Allied the promissory note referred to in Guzeman's signed statement agreeing to provide collateral; it found that Guzeman had not paid for the two limited partnership interests and had no ownership interest in them; it found the interests were of no value; and it found that Allied had not intended to waive its right to a mechanic's lien by receiving the two partnership interests as security.

We conclude otherwise. The short answer to Allied's contention that it received no promissory note or valuable collateral is that the records of Allied and the partnership—and the accounting firm which both used—showed that Allied and then Maddox did receive the collateral Allied had demanded. Guzeman's signed promise to deliver that collateral was the equivalent of a promissory note under the circumstances. Moreover, the short answer to Allied's contention it received nothing of value is that Droste's discovery efforts yielded persuasive evidence to the contrary. When Allied received the two partnership units and assigned them to Maddox, significant tax savings for Maddox resulted from the deductions he thereby obtained.

Finally, the person asserting a section 572.3 defense to a mechanic's lien need not prove that the person taking collateral intended to waive its right to a mechanic's lien. The statute does not mention intent, and our cases have not required proof of intent that the lien be waived.

In *Perfection Tire & Rubber Co. v. Kellogg-Mackay Equipment Co.*, 194 Iowa 523, 187 N.W. 32 (1922), our court traced the history of this statute and held that "if collateral security is taken, ipso facto the right to the lien is denied." We said:

> Stating the provision in another form, if the person claiming the lien has taken collateral security at the time of making the contract to furnish material or during

the progress of the work, he is not entitled to the lien. This is true independently of the presumed intention of the parties, since the statute in express terms denies the right to the lien and the lien does not exist independently of the statute.

*Id.* at 527–28, 187 N.W. at 34.

Allied relies upon our more recent case of *Central Ready Mix Co. v. Ruhlin Construction Co.*, 258 Iowa 500, 139 N.W.2d 444 (1966), where we found that the taking of a separate promissory note for work performed for an owner did not amount to the taking of collateral within the meaning of the statute. We there quoted the definition of "collateral" found in the *Perfection Tire & Rubber* case, but held that a promissory note did not amount to collateral within the meaning of the statute. Our court said in *Central Ready Mix:*

> By taking Caldbeck's note Central received no additional security or guaranty. There is no evidence Central relied only on Caldbeck's credit or intended to waive its known right to a mechanic's lien.

*Id.* at 506–07, 139 N.W.2d at 448.

The quoted reference to intent in that case was dictum, unnecessary to the decision. We restate the holding of *Perfection Tire & Rubber:* the intention of the parties giving and receiving collateral is immaterial to the question whether the taking of collateral extinguished the right to enforce a mechanic's lien. The statute does not require intent, and we believe the legislature did not require intent as an element of this defense.

We conclude that Allied gave up its right to a mechanic's lien when it requested and received from Guzeman a promise supported by collateral security and then received delivery of that security while it was performing remodeling work on the Xerox premises.

Allied argues that equitable principles should override Droste's statutory defense because the collateral was of such doubtful value, while Droste did not rely upon—did not even know about—Guzeman's giving of the collateral to Allied until after the quiet title action had been commenced and discovery pursued. Mechanic's liens, however, are creatures of statute, and they reach only so far and survive only so long as the statute permits. The legislature has not seen fit to provide an "equitable circumstances" exception to section 572.3 and has not changed the wording of the statute since we applied it to the taking of collateral security, regardless of intention, in the 1922 *Perfection Tire & Rubber* case.

Because Allied's lien was extinguished by its taking of collateral, we need not address its cross-appeal contention that the trial court awarded it less than the full amount of its claim.

## IV. Attorney Fees.

In a separate order which followed entry of the decree enforcing mechanic's liens, the trial court awarded all four contractors reasonable attorney fees based on a 1983 amendment to Iowa Code chapter 572, which provided:

> In a court action to enforce a mechanic's lien, if the plaintiff furnished labor or materials directly to the defendant, the plaintiff, if successful, shall be awarded reasonable attorney fees.

1983 Iowa Acts ch. 106, § 1 (codified at Iowa Code § 572.32 (1985)). Droste contends that the trial court erred in giving retroactive effect to that statute. The issue is moot as to those contractors whose mechanic's liens we find unenforceable. We have found, however, that Baker is entitled to enforce its lien in the amount of $4671.28, with interest, and we therefore must decide whether that amended statute gave Baker the right to recover its reasonable attorney fees.

Statutes are presumed to be prospective in operation unless expressly made retrospective. Iowa Code § 4.5 (1985). We have recognized an exception to that rule where the statute relates solely to remedy or procedure. *See Janda v. Iowa Industrial Hydraulics, Inc.*, 326 N.W.2d 339, 343–44 (Iowa 1982); *Bankers Trust Co. v.*

*Woltz,* 326 N.W.2d 274, 278 (Iowa 1982); *State ex rel. Turner v. Limbrecht,* 246 N.W.2d 330, 332 (Iowa 1976).

We conclude that the amendment which allows attorney fees to persons who successfully enforce mechanic's liens should be given retroactive effect. Baker, the only contractor entitled to enforcement of its mechanic's lien, was entitled to recover attorney fees. The amount allowed for Baker's attorney fees was not challenged by Droste and is affirmed.

Baker has also requested attorney fees on appeal, but we have enforced its lien only in an amount which Droste at trial conceded was owed. Baker's request for attorney fees for work performed in connection with its appeal is denied.

In summary, we affirm the decree to the extent that title to the subject real estate is quieted in Droste, subject to a mechanic's lien of Baker which may be enforced against the property in the sum of $4671.28, together with interest and attorney fees as herein provided. In all other respects the decree is reversed, with all other counterclaims filed by the appellees dismissed.

Costs of this appeal shall be divided equally among appellees Allied, One Trip, and Kading.

AFFIRMED IN PART AND REVERSED IN PART.