WEBSTER INDUSTRIES, INC., a Minnesota Corporation; Kretz Lumber Co., Inc., a Wisconsin Corporation; Woodline Manufacturing, Inc., a Minnesota Corporation; Wycombe Wood Products, Inc., a Wisconsin Corporation; and Hart Tie & Lumber, Inc., a Wisconsin Corporation, Plaintiffs,

v.

NORTHWOOD DOORS, INC., an Iowa Corporation; Partridge River Superior, Inc., a Wisconsin Corporation; Partridge River, Inc., a Minnesota Corporation; Partridge River Holdings, Inc., a Minnesota Corporation; Superior Dimension and Doors, L.L.C., a Minnesota Limited Liability Company; China Hardwood Import Products, L.L.C., a Minnesota Limited Liability Company; Andrew Richey; and Michael Miner, Defendants.

No. C 02–3068–MWB.

United States District Court, N.D. Iowa, Central Division.

Nov. 14, 2002.

---

Ryan Patrick Tang, Litow Law Office, PC, Cedar Rapids, IA, for Plaintiffs.

John Werner, Donna Renae Miller, Des Moines, IA, for Defendants.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT MINER'S MOTION TO DISMISS, JOINED IN BY DEFENDANT NORTHWOOD DOORS, THE MOVING DEFENDANTS' PARTIAL WITHDRAWAL OF MOTION TO DISMISS, AND DEFENDANT CHINA HARDWOOD IMPORTS' "SPECIAL APPEARANCE"**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION .................................................... 984
   A. The Original Petition ...................................... 984
   B. The Removal And Amendment Of The Petition .......................... 986
   C. The Answers And The Motion To Dismiss ............................... 986
   D. The "Special Appearance" By China Hardwood Imports.................. 987

II. LEGAL ANALYSIS ................................................. 988
   A. The "Special Appearance" by China Hardwood Imports ................... 988
   B. The Motion To Dismiss ..................................... 988
      1. Partial withdrawal of the motion .................................. 988
      2. Standards for the defendants' motion to dismiss ...................... 989
         a. Timeliness of the motion ................................... 989
         b. Failure to state a claim ..................................... 990
      3. The "Quantum Valebant" claims ............................... 991
         a. A note on nomenclature ..................................... 991
         b. Pleading versus recovery .................................... 992
            i. The Giese Construction decision .......................... 992
            ii. Other authorities ..................................... 992
            iii. Proper formulation of the rule .......................... 994
         c. Summary ............................................. 994
      4. The claims of "Misappropriation of Corporate Opportunity/Breach of Fiduciary Duty/Breach of Duty of Good Faith and Fair Dealing" .............................................. 994
         a. Actions by creditors against corporate officers and directors ........ 995
         b. The "fraud exception" ................................... 996
         c. The "insolvency" exception ................................ 997
         d. Summary ............................................. 998

III. CONCLUSION ................................................... 998

In this lawsuit, which was removed by one of the defendants from the Iowa District Court for Worth County, the plaintiffs assert forty claims, under a variety of theories, against allegedly related defendants arising primarily from the failure of insolvent defendant Northwood Doors, Inc., to pay for goods and services that the plaintiffs provided to that defendant. This matter comes before the court pursuant to defendant Michael Miner's October 7, 2002, motion to dismiss certain counts of the plaintiffs' complaint. On October 16, 2002, defendant Northwood Doors, Inc., joined in part in defendant Miner's motion to dismiss. The plaintiffs resisted the motion to dismiss on October 17, 2002, and thereafter, on October 23, 2002, the mov-

ing defendants filed a partial withdrawal of their motion to dismiss. This matter also comes before the court on the October 16, 2002, "Special Appearance" by defendant China Hardwood Import Products, in which that defendant asks the Clerk and Judges of this court to refuse to enter a default judgment against that defendant. The plaintiffs have filed no response to the "Special Appearance."

## I.  INTRODUCTION

### A.  The Original Petition

On June 13, 2002, the various plaintiffs captioned above filed a "Petition at Law" in the Iowa District Court for Worth County asserting numerous claims on various theories against the named defendants. The individual defendants, Andrew Richey and Michael Miner, are alleged to be responsible for the day-to-day operations of the defendant companies. The petition also alleges that defendant Northwood Doors, Inc., is insolvent. However, the petition alleges that, at all pertinent times, there existed a unity of interest and ownership among the various defendants, such that the individuality or separateness of each corporation or individual should be disregarded, and that to fail to do so would sanction a fraud and/or promote injustice.

The first fifteen counts of the petition are closely related. Counts I through V of the petition allege "Actions on Account" by each of the plaintiffs in turn against defendant Northwood Doors, Inc., for failure to pay for goods and services delivered to Northwood Doors. Thus, Count I seeks to recover $177,230.88 on account for plaintiff Webster; Count II seeks to recover $76,539.03 on account for plaintiff Kretz; Count III seeks to recover $99,154.91 on account for plaintiff Woodline; Count IV seeks to recover $62,575.70 on account for plaintiff Wycombe; and Count V seeks to recover $83,708.57 on account for plaintiff

Hart. Each "action on account" also seeks pre- and post-petition interest, costs, and attorneys' fees. Counts VI through X seek to recover the same sums on behalf of the same plaintiffs, respectively, on a theory of "Quantum Meruit." Counts XI through XV again seek to recover the same sums on behalf of the same plaintiffs, respectively, on a theory of "Account Stated," in that each count alleges that a statement of account reflecting the transactional history of the parties was intended as a final rendering of the status of the account, that defendant Northwood Doors never objected to the accuracy of such accounts, within a reasonable time after receipt, prior to commencement of this litigation, and at least implies that Northwood Doors has nevertheless failed to pay the stated accounts.

Counts XVI through XX again seek to recover the same sums on behalf of the same plaintiffs, respectively, but on a considerably different theory, a theory of "Fraudulent Transfer." Somewhat more specifically, each of these counts alleges that Northwood Doors transferred and conveyed assets to defendants Partridge River Superior, Inc., Partridge River, Inc., and Partridge River Holdings, Inc., which the court will refer to collectively as the "Partridge Defendants," including inventory, machinery, equipment, and personnel, but that the Partridge Defendants later conveyed some or all of those same assets to defendant China Hardwood Import Products and defendant Superior Dimension and Doors, while the defendants were all "insiders" within the meaning of the Uniform Fraudulent Transfer Act, and while defendant Northwood Doors was insolvent. These counts allege, further, that the transfers were made with the actual intent to hinder, delay, or defraud creditors by (1) not receiving reasonably equivalent value in exchange; (2) making the

transfers when Northwood Doors was insolvent or shortly before Northwood Doors became insolvent; and (3) making the transfers after Northwood Doors had been threatened with suit. These counts also allege that subsequent transfers among the defendants were made while the Partridge Defendants were insolvent, also with the actual intent to hinder, delay, or defraud creditors in the same ways alleged for the transfers from Northwood Doors to the Partridge Defendants. Finally, each "fraudulent transfer" count alleges that individual defendants Andrew Richey and Michael Miner directed the fraudulent transfers and that they have owned and/or operated the defendant companies in such a manner that, when considered under the totality of the circumstances, they should be held individually liable and the corporate or limited liability entities should be disregarded.

Counts XXI through XXV again seek to recover the same sums on behalf of the same plaintiffs, respectively, but on a theory of "Unjust Enrichment." These counts are premised on allegations that if the defendants are allowed to retain the property transferred as alleged in prior counts and not required to pay the original creditors, they will receive the benefits of the plaintiffs' labors, efforts, investments, and property, to their benefit and at the plaintiffs' expense.

Counts XXVI through XXX again seek to recover the same sums on behalf of the same plaintiffs, respectively, but on a theory denominated "Misappropriation of Corporate Opportunity/Breach of Fiduciary Duty/Breach of Duty of Good Faith and Fair Dealing." These counts allege that individual defendants Andrew Richey and Michael Miner held corporate fiduciary duties to one or more of the defendant companies, but appropriated business opportunities in relation to dealings between the plaintiffs and defendant Northwood Doors that, in fairness, belonged to defendant Northwood Doors, that were in line with the normal business activities of Northwood Doors, and in which Northwood Doors had a legitimate interest. These counts allege, further, that the individual defendants exploited the aforementioned business opportunities and that, by doing so, the individual defendants became constructive trustees for the benefit of defendant Northwood Doors as to all profits and benefits received from those opportunities. These counts also allege that the individual defendants, Richey and Miner, "have failed to act with the utmost good faith and not for their personal interests in regard to the affairs of" the defendant companies, and that the individual defendants "have failed to provide the defendant companies with complete loyalty, honesty, and good faith." *See, e.g.,* Complaint, Count XXVI, ¶¶ 212–13. Owing to the insolvency of one or more of the defendant companies, the plaintiffs allege that they now "stand in the place of any shareholders" of the defendant companies and may bring this cause of action.

Counts XXXI through XXXV again seek to recover the same sums on behalf of the same plaintiffs, respectively, but on a theory of "Fraud." Somewhat more specifically, these counts allege that defendant Northwood Doors represented to each plaintiff a willingness to pay for goods purchased, and in so doing, obtained goods from that plaintiff, that such representations were material, false, known by the "defendants" to be false, were intended by the "defendants" to deceive each plaintiff, and that each plaintiff reasonably relied on the representations of defendant Northwood Doors in extending credit. They allege, further, that the false representations of defendant Northwood Doors proximately caused the injuries suffered by each plaintiff, including but not limited to

the reasonable value of all goods sold and services performed for the defendants for which payment has not been received, as well as lost profits, interest, collection costs, legal fees, and costs of bringing this action.

Finally, Counts XXXVI through XL again seek to recover the same sums on behalf of the same plaintiffs, respectively, but on a theory of violation of the "Racketeer Influenced and Corrupt Organization Act (RICO)." However, because the RICO counts are not challenged in the motions presently before the court, the court will not elaborate on those claims at this time.

### B. The Removal And Amendment Of The Petition

Notwithstanding that the court has not elaborated on the nature of the RICO claims above, it is on the basis of those federal claims that defendant Miner filed his Notice of Removal for this action on September 9, 2002. In his Notice of Removal, defendant Miner alleged that the RICO claims are claims over which this court would have original jurisdiction pursuant to 28 U.S.C. § 1331, and that the action is, therefore, removable. The plaintiffs have not challenged removal of the action to this court and the time to do so has now run. See 28 U.S.C. § 1447(c). None of the defendants had answered the petition at the time of removal.

After removal, on October 11, 2002, the plaintiffs sought leave to amend their removed complaint to identify properly defendant "Superior Door and Dimension, L.L.C.," as "Superior Dimension and Doors, L.L.C." Defendant Michael Miner, the only defendant who had answered the removed complaint by that time, indicated that he did not object to the amendment, and the court granted the amendment on October 15, 2002.

### C. The Answers And The Motion To Dismiss

After removal of this action, defendant Miner was twice granted an extension of time to move or plead in response to the removed complaint. Ultimately, on October 7, 2002, defendant Miner did both: He filed an Answer to the removed complaint and a separate motion to dismiss Counts VI through X ("Quantum Meruit"), XXI through XXV ("Unjust Enrichment"), and XXVI–XXX ("Misappropriation of Corporate Opportunity/Breach of Fiduciary Duty/Breach of Duty of Good Faith and Fair Dealing"), arguing that these counts failed to state claims upon which relief can be granted.

Turning briefly to the substance of defendant Miner's motion to dismiss, as to the "Quantum Meruit" claims, defendant Miner asserts that recovery under a theory of quantum meruit is precluded by the plaintiffs' assertion of claims of express contracts in Counts I through V. As to the "Unjust Enrichment" claims, defendant Miner contends that the plaintiffs have failed to plead the absence of an adequate remedy at law. Finally, as to the claims of "Misappropriation of Corporate Opportunity/Breach of Fiduciary Duty/Breach of Duty of Good Faith and Fair Dealing," defendant Miner contends that these claims are shareholder derivative claims and that the plaintiffs, therefore, lack standing to assert them.

On October 16, 2002, defendant Northwood Doors also simultaneously filed its Answer and a separate partial joinder in defendant Michael Miner's motion to dismiss. Defendant Northwood Doors joined in defendant Miner's motion to dismiss as to the "Quantum Meruit" and "Unjust Enrichment" claims, but not as to the claims of "Misappropriation of Corporate Opportunity/Breach of Fiduciary Duty/Breach of Duty of Good Faith and Fair Dealing,"

which appear to be directed only at the individual defendants.

On October 17, 2002, the plaintiffs filed their resistance to the motion to dismiss by defendants Miner and Northwood Doors. The plaintiffs contend, in the first instance, that the defendants' motion to dismiss is untimely, because the motion (or joinder) did not precede, but was instead filed simultaneously with, the answer of the moving or joining defendant, contrary to the plain language of Rule 12(b) of the Federal Rules of Civil Procedure. Next, although the plaintiffs admit that their "Quantum Meruit" claims are more properly described as "Quantum Valebant" claims, they contend that such an error is not sufficient to warrant dismissal, because they have pleaded sufficient facts under notice pleading to sustain the claims as properly denominated. Moreover, they assert that they have properly *pleaded* the claims properly denominated as "Quantum Valebant" *as alternatives for relief,* even if they cannot ultimately recover under both a "Quantum Valebant" theory and some other theory. As to any actual bar on *recovery,* they contend that there is no allegation of any express contract, or breach of any such express contract, in their complaint, although they "look forward" to seeing what the defendants contend are the express contracts. As to their "Unjust Enrichment" claims, the plaintiffs contend that they have, again, properly pleaded alternative theories of recovery, and that implicit in their allegation of unjust enrichment is that no adequate remedy at law exists. They point out that an allegation of "no adequate remedy at law," even if it had been made, would have been a conclusory one that the court would not be required to take as true. They contend that they will ultimately be able to prove absence of an adequate remedy at law upon the facts alleged. They also argue that they have

not prayed for any "legal" relief, but have instead asserted only various claims in equity. Finally, as to Counts XXVI through XXX, the plaintiffs contend that the claims in these counts are not inherently shareholder derivative actions, but are instead actions that a creditor may properly maintain against officers and directors of a debtor corporation where fraud is alleged.

In reply, on October 23, 2002, defendants Miner and Northwood Doors filed a "Partial Withdrawal of Motion to Dismiss," stating that the defendants withdraw their motion to dismiss as to the "Unjust Enrichment" claims in Counts XXI through XXV. However, the moving defendants made no additional argument in reply to the plaintiffs' arguments concerning the viability of Counts VI through X or XXVI through XXX.

### D. The "Special Appearance" By China Hardwood Imports

Also before the court is the "Special Appearance" filed on October 16, 2002, by defendant China Hardwood Import Products, Inc., which identifies itself simply as China Hardwood Imports. In that "Special Appearance," China Hardwood Imports contends that, while personal service was attempted upon it by serving Michael Miner, Michael Miner is not an officer, director, or person otherwise responsible for the operations of China Hardwood Imports. Because China Hardwood Imports contends that it has not been properly served, it contends that it is not subject to the jurisdiction of this court. China Hardwood Imports represents that, some time after the plaintiffs attempted service upon it by serving Michael Miner, the plaintiffs sent China Hardwood Imports a "Notice of Intent to File Written Application for Default." In its "Special Appearance," therefore, China Hardwood Imports argues that any default for which the plaintiffs apply

should be denied by the Clerk of Court or a judge of this court, because China Hardwood Imports is not subject to the jurisdiction of this court, in light of the failure of proper service. The plaintiffs have not responded to the "Special Appearance" filed by China Hardwood Imports, but neither have they filed any request for entry of default against that defendant by the Clerk of Court or any request for entry of default judgment against that defendant by this court.

## II. LEGAL ANALYSIS

### A. The "Special Appearance" by China Hardwood Imports

Because it is the simpler of the matters before the court at this time, the court will consider first the "Special Appearance" filed by China Hardwood Imports and the specific relief requested therein. Rule 66 of the Iowa Rules of Civil Procedure abolished the "special appearance" effective July 1, 1987. See IOWA R. CIV. P. 66 ("The special appearance is abolished. A defendant may not appear specially for the sole purpose of attacking the jurisdiction of the court.") (as amended effective July 1, 1987; stricken effective Jan. 24, 1998); see generally Nationwide Engr'g & Control Sys. v. Thomas, 837 F.2d 345, 347–48 n. 2 (8th Cir.1988); Moyer v. City of Des Moines, 505 N.W.2d 191, 193 n. 3 (Iowa 1993). Instead, under Iowa law, a defendant may assert lack of personal jurisdiction by pre-answer motion pursuant to former Rule 104, see id., which has been recodified, in pertinent part, as Rule 1.421. IOWA R. CIV. P. 1.421(1)(b). Moreover, because China Hardwood Imports' "Special Appearance" was filed in this court after removal had already been effected, the Federal Rules of Civil Procedure, not the Iowa Rules of Civil Procedure, are controlling. Rule 12 of the Federal Rules of Civil Procedure abolished the distinction between a "gener-

al appearance" and a "special appearance" in federal court when the Rules were adopted in 1938, even longer ago than the "special appearance" was eliminated from the Iowa Rules of Civil Procedure. See FED. R. CIV. P. 12; see also Davenport v. Ralph N. Peters & Co., 386 F.2d 199, 204 (4th Cir.1967) ("[S]ince the advent of Rule 12(b), Fed.R.Civ.P., the distinction between general and special appearances in federal practice has been abolished."). Therefore, there is no authority for China Hardwood Imports' "Special Appearance" under either Iowa or federal law.

■ Even assuming that China Hardwood Imports' "Special Appearance" could be construed as a pre-answer motion attacking personal jurisdiction pursuant to Rule 12(b)(2), the court finds it unnecessary to consider the merits of such a motion. This is so, because there has as yet been no attempt by the plaintiffs to seek entry of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure or entry of default judgment pursuant to Rule 55(b), nor any other action by the plaintiffs invoking the court's personal jurisdiction over defendant China Hardwood Imports. Consequently, the "Special Appearance" by China Hardwood Imports, which seeks denial of a non-existent request for entry of default or default judgment, is premature, and will be denied without prejudice to reassertion when and if a challenge to this court's personal jurisdiction over China Hardwood Imports becomes necessary or appropriate.

The court turns next to the more substantial questions presented in the motion to dismiss by defendants Miner and Northwood Doors.

### B. The Motion To Dismiss

#### 1. Partial withdrawal of the motion

As noted above, the moving defendants moved to withdraw that part of their mo-

tion to dismiss seeking dismissal of Counts XXI through XXV ("Unjust Enrichment"). The plaintiffs have made no objection to the partial withdrawal of the defendants' motion to dismiss and the court can see none. Therefore, the October 23, 2002, Partial Withdrawal of Motion to Dismiss by defendants Michael Miner and Northwood Doors will be granted. The court will consider only that part of Michael Miner's and Northwood Doors' joint motion to dismiss seeking dismissal of Counts VI through X ("Quantum Meruit," recharacterized by the plaintiffs as "Quantum Valebant") and that part of defendant Miner's motion to dismiss seeking dismissal of Counts XXVI through XXX ("Misappropriation of Corporate Opportunity/Breach of Fiduciary Duty/Breach of Duty of Good Faith and Fair Dealing").

### 2. Standards for the defendants' motion to dismiss

#### a. Timeliness of the motion

■ The plaintiffs argue, first, that the remaining portions of the defendants' motion to dismiss should be denied, because the motion is untimely. Specifically, they argue that a motion to dismiss "for failure to state a claim upon which relief can be granted" is a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure that must be made *before* an answer is filed. In this case, the plaintiffs point out that the defendants both *simultaneously* answered the removed complaint and moved (or joined in the motion for) dismissal. The defendants did not bother to respond to the plaintiffs' contention that their motion to dismiss is untimely. Nevertheless, the court finds that this challenge to the timeliness of the motion cannot simply be ignored.

In *Westcott v. City of Omaha*, 901 F.2d 1486 (8th Cir.1990), the Eighth Circuit Court of Appeals considered the nature of a post-answer motion to dismiss for failure to state a claim upon which relief can be granted, as follows:

> The parties agree that this case should be analyzed under the rubric of Federal Rule of Civil Procedure 12(b)(6). Technically, however, a Rule 12(b)(6) motion cannot be filed after an answer has been submitted. *See* Fed.R.Civ.P. 12(b). But since Rule 12(h)(2) provides that "[a] defense of failure to state a claim upon which relief can be granted" may be advanced in a motion for judgment on the pleadings under Rule 12(c), we will treat the City's motion as if it had been styled a 12(c) motion. *St. Paul Ramsey County Med. Ctr. v. Pennington County*, 857 F.2d 1185, 1187 (8th Cir.1988). This distinction is purely formal, because we review this 12(c) motion under the standard that governs 12(b)(6) motions. *Id.; accord Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir.1987) (collecting cases).

*Westcott*, 901 F.2d at 1488. Therefore, the plaintiffs are correct that the defendants' motion to dismiss, if made pursuant to Rule 12(b)(6), is technically "untimely," because it was filed (or joined in) simultaneously with, not before, the defendants' answers. However, the moving defendants have not identified any specific subsection of Rule 12 as the basis for their motion. Moreover, to the extent that the defendants have asserted that the challenged counts fail to state claims upon which relief can be granted, like the court in *Westcott*, this court will simply construe the motion as a motion for judgment on the pleadings pursuant to Rule 12(c), and proceed without further concern for the "purely formal distinction" between motions pursuant to Rule 12(b)(6) and Rule 12(c), as both kinds of motions are governed by the same standards. *See id.; see also* FED. R. CIV. P. 12(c) & (h)(2).

### b. Failure to state a claim

The issue on a motion to dismiss for failure to state a claim upon which relief can be granted—whether pursuant to Rule 12(b)(6) before an answer is filed or pursuant to Rule 12(c) if an answer has been filed, but no discovery undertaken—is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of his or her claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agric. Chem. Corp.,* 872 F.2d 1373, 1376 (8th Cir.1989). In considering such a motion to dismiss, the court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Gross v. Weber,* 186 F.3d 1089, 1090 (8th Cir.1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]."); *St. Croix Waterway Ass'n v. Meyer,* 178 F.3d 515, 519 (8th Cir.1999) ("We take the well-pleaded allegations in the complaint as true and view the complaint, and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff."); *Gordon v. Hansen,* 168 F.3d 1109, 1113 (8th Cir.1999) (same); *Midwestern Machinery, Inc. v. Northwest Airlines,* 167 F.3d 439, 441 (8th Cir.1999) (same); *Wisdom v. First Midwest Bank,* 167 F.3d 402, 405 (8th Cir.1999) (same); *Duffy v. Landberg,* 133 F.3d 1120, 1122 (8th Cir.) (same), *cert. denied,* 525 U.S. 821, 119 S.Ct. 62, 142 L.Ed.2d 49 (1998); *Doe v. Norwest Bank Minn., N.A.,* 107 F.3d 1297, 1303–04 (8th Cir.1997) (same); *WMX Techs., Inc. v. Gasconade County, Mo.,* 105 F.3d 1195, 1198 (8th Cir.1997) (same); *First Commercial Trust v. Colt's Mfg. Co.,* 77 F.3d 1081, 1083 (8th Cir.1996) (same).

The court is mindful that in treating the factual allegations of a complaint as true, the court must "reject conclusory allegations of law and unwarranted inferences." *Silver v. H & R Block, Inc.,* 105 F.3d 394, 397 (8th Cir.1997) (citing *In re Syntex Corp. Securities Lit.,* 95 F.3d 922, 926 (9th Cir.1996)); *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990) (the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts," citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987), and 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 595–97 (1969)); *see also LRL Properties v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1103 (6th Cir.1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences," quoting *Morgan,* 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in the complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Silver,* 105 F.3d at 397; *Westcott,* 901 F.2d at 1488.

The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire,* 112 F.3d 1339, 1347 (8th Cir.1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *accord Conley,* 355 U.S. at 45–46, 78 S.Ct. 99 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Meyer,* 178 F.3d at 519 ("The question

before the district court, and this court on appeal, is whether the plaintiff can prove any set of facts which would entitle the plaintiff to relief" and "[t]he complaint should be dismissed 'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations,'" quoting *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir. 1995)); *Gordon,* 168 F.3d at 1113 ("We will not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief."); *Midwestern Machinery, Inc.,* 167 F.3d at 441 (same); *Springdale Educ. Ass'n v. Springdale Sch. Dist.,* 133 F.3d 649, 651 (8th Cir.1998) (same); *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 546 (8th Cir.1997) (same); *Doe,* 107 F.3d at 1304 (same); *WMX Techs., Inc.,* 105 F.3d at 1198 (same). Dismissal cannot be based on nothing more than a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Thus, "[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir.1995) (internal quotation marks and ellipses omitted); *accord Parnes,* 122 F.3d at 546 (also considering whether there is an "insuperable bar" to relief" on the claim).

With these standards in mind, the court turns to the merits of the remaining portions of the defendants' motion to dismiss.

### 3. The "Quantum Valebant" claims

In support of that portion of their motion to dismiss seeking dismissal of Counts VI through X, the defendants argue that recovery under a theory of quantum meru-

it, as the theory underlying those counts was originally identified, is precluded by what the defendants characterize as claims based on express contracts in Counts I through V. In support of their contention that dismissal of Counts VI through X is warranted on this ground, the defendants rely primarily on *Giese Construction Company, Inc. v. Randa,* 524 N.W.2d 427, 431 (Iowa Ct.App.1994). The plaintiffs counter that whatever limitations there may be on their ultimate ability to *recover* on these claims—which they have recharacterized as "Quantum Valebant" claims—as well as on other claims, there is no limitation under Iowa or federal law on their ability to *plead* this and other theories of recovery *as alternatives.*

#### a. A note on nomenclature

The court notes, first, that the defendants have not disputed the plaintiffs' recharacterization of their claims in Counts VI through X as "quantum valebant" rather than "quantum meruit," and indeed, the court finds that the defendants could not reasonably do so. The only Iowa state court decision that this court has thus far discovered discussing "quantum valebant" claims explains that "the antiquated term *quantum meruit* is actually used to denote a particular subclass of implied-in-fact contracts—an implied-in-fact contract to pay for services rendered," and that "[t]he other sub specie of an implied-in-fact contract was called *quantum valebant* and was pled in the situation where goods were delivered upon actions implying mutual assent but were not paid for." *Iowa Waste Sys., Inc. v. Buchanan County,* 617 N.W.2d 23, 29 n. 3 (Iowa Ct.App.2000) (citing CORBIN ON CONTRACTS § 1.18(b) for the definition of "quantum valebant"). That decision also explains that, "As the term *quantum meruit* is not only antiquated but inevitably breeds confusion, the preferred phrase for asserting such a cause of action is an

*implied-in-fact contract.*" *Id.* at 29 (emphasis in the original). However "antiquated" the identification of the claims, it appears plain to the court, upon reading the factual allegations of the removed complaint, that the plaintiffs are, indeed, asserting what might be properly described as "quantum valebant" claims, rather than "quantum meruit" claims, because they allege precisely that "goods were delivered upon actions implying mutual assent but were not paid for." *Id.* Also, it is clear that, whatever the proper nomenclature for their claims in Counts VI through X, the plaintiffs are asserting a species of "implied contract" as the basis for relief.

### b. Pleading versus recovery

■ The plaintiffs plainly have the better side of the argument concerning their ability to plead their "quantum valebant" claims in the alternative to other claims for relief, as well as the proper nomenclature for those claims. This is so, notwithstanding that, as the defendants assert, in *Giese Construction,* the Iowa Court of Appeals stated, "One who pleads an express oral contract cannot ordinarily recover under an implied contract or quantum meruit." *Giese Constr. Co., Inc.,* 524 N.W.2d at 431 (citing *Guldberg v. Greenfield,* 259 Iowa 873, 146 N.W.2d 298, 301 (Iowa 1966)).

*i. The Giese Construction decision.* In *Giese Construction,* the Iowa Court of Appeals added that "[a]n express contract and an implied contract cannot coexist with respect to the same subject matter, and the law will not imply a contract where there is an express contract." *Id.* (citing *Clemens Graf Droste Zu Vischering v. Kading,* 368 N.W.2d 702, 712 (Iowa 1985)). Neither proposition asserted in *Giese Construction* is particularly helpful here.

First, the finding by the Iowa Court of Appeals that the plaintiff "did ... plead

the existence of an express contract" is directly contrary to that court's own description of the plaintiff's action as "a petition for foreclosure of its mechanic's lien or for alternative relief based on *implied* contract and quantum meruit." *Id.* at 429 (emphasis added). Moreover, the district court had dismissed the petition for foreclosure of the plaintiff's mechanic's lien and "concluded [that the plaintiff] failed to prove there was a contract with [the defendant] or his agent for the removal and paving of the driveway," and that the plaintiff "could not recover under a theory of implied contract or quantum meruit because [the defendant] was not aware of the project until it was completed, the driveway did not meet acceptable standards, and [the defendant] was damaged as a result of its installation." *Id.* at 430. Thus, it is not clear at what point in the litigation either of the propositions asserted by the Iowa Court of Appeals ever properly came into play, where it does not appear that there had ever been an "express contract" claim pleaded against the defendant, and the district court found that there was neither an express nor an implied contract under the circumstances presented, so that there was no question of an attempt to make express and implied contracts "coexist."

*ii. Other authorities.* Moreover, it is clear from other decisions that the defendants' argument that the rule that one who pleads an express contract cannot recover on an implied contract or quantum meruit stands as a bar to the *pleading* of express and implied contract theories *in the alternative* is not only an attempt to make "the tail wag the dog," but is patently contrary to Iowa law. Some clarity can be gained from the decision upon which the Iowa Court of Appeals relied in *Giese Construction,* the much earlier decision of the Iowa Supreme Court in *Guldberg v. Greenfield,*

259 Iowa 873, 146 N.W.2d 298, 301 (1966). In *Guldberg,* the Iowa Supreme Court stated, "We have held many times that one who pleads an express oral contract cannot ordinarily recover upon an implied contract or quantum meruit." *Guldberg,* 146 N.W.2d at 301 (citing *Maasdam v. Estate of Maasdam,* 237 Iowa 877, 24 N.W.2d 316, 320 (1946)). However, the court explained that "[w]e are not content to rest our holding as to Count I [the contract claim] on the proposition *plaintiff did not plead an implied contract* with defendants. We think the proof does not support recovery on the theory of implied contract with them." *Id.* at 302 (emphasis added). Thus, the bar to recovery on an implied contract theory in *Guldberg* was, in the first instance, that the plaintiff had pleaded *only* an express contract theory, and in the second instance, that the plaintiff had also failed to prove circumstances giving rise to an implied contract, after having failed to prove an express oral contract. *See id.* at 301–02 (first concluding that the theory that the plaintiff had pleaded was "express oral contract," then agreeing with the trial court's conclusion that there was no express contract, nor circumstances giving rise to an implied contract). Thus, the court in *Guldberg* clearly considered express contract and implied contract theories as *alternatives.*

Even more clarity can be drawn from the decision in *Maasdam v. Estate of Maasdam,* 237 Iowa 877, 24 N.W.2d 316, 320 (1946), upon which the court in *Guldberg,* in turn, relied. In *Maasdam,* the Iowa Supreme Court stated the rule to be that "[o]ne seeking to recover *solely* on an express contract specific as to all of its terms cannot recover on an implied contract, or upon a quantum meruit, or vice versa. To do so would permit a fatal variance." *Maasdam,* 24 N.W.2d at 320 (emphasis added). However, the court added, "One may, of course, plead these causes of action in

separate counts." *Id.* Therefore, *Maasdam* not only confirms this court's reading of later precedent as standing for the proposition that one who pleads *only* an express contract cannot recover on an implied contract theory instead, but specifically permits the *pleading* of express and implied contract theories *as alternatives,* supporting the plaintiffs' position rather than the defendants' in this case. This is so, even assuming—without deciding—that the plaintiffs have, indeed, pleaded an express contract theory as well as implied contract or quantum meruit theories.

The *Maasdam* decision is not alone in expressly sanctioning the pleading of express and implied contract theories as alternatives for relief. The plaintiffs rely on *Nelson v. Iowa–Illinois Gas and Electric Company,* 259 Iowa 101, 143 N.W.2d 289 (Iowa 1966), which states the following, in pertinent part:

> Rule 22 [of the Iowa Rules of Civil Procedure] ... provides: "A single plaintiff may join in the same petition as many causes of action, legal or equitable, independent or alternative, as he may have against a single defendant."
>
> This rule is a recognition of a plaintiff's right, long recognized in Iowa, to plead in separate counts more than one cause of action, e.g., one count based on express contract and another on implied contract or quantum meruit. *Weaver Constr. Co. v. Farmers National Bank,* 253 Iowa 1280, 1291, 115 N.W.2d 804, 810, and citation; *Connell v. Hays,* 255 Iowa 261, 271, 122 N.W.2d 341, 347.

*Nelson,* 143 N.W.2d at 293. The Iowa Supreme Court also discussed these principles in its venerable decision in *Russell v. John Clemens & Co.,* 196 Iowa 1121, 195 N.W. 1009 (Iowa 1923):

> It must be and is conceded that a plaintiff under the facts herein may plead his

cause of action in alternative counts, one on express contract fixing his compensation, and one on an implied contract or quantum meruit. This is a familiar and unquestioned rule. It is a legacy of the common law of pleading on the common counts, and is universally recognized in modern practice. Plaintiff at the initial stage of the proceeding may be apprehensive that he will not be able to meet by evidence the full measure of the requirements of the contract pleaded, and consequently he is privileged, in a suit for the enforcement of the contract, to add a second count. In other words, he is entitled to plead to meet the contingencies of the proofs. However, if the evidence is insufficient to have the cause submitted to the jury on the two issues as pleaded, it is proper on the part of the court to deny the plaintiff the right to take the opinion of the jury on both counts.

*Russell,* 195 N.W. at 1010. The Iowa Rules of Civil Procedure still recognize that "[a] single plaintiff may join in the same petition as many causes of action, legal or equitable, independent or alternative, as there are against a single defendant." IOWA R. CIV. P. 1.231 (renumbered from Rule 22 and amended November 9, 2001, effective February 15, 2002). Rule 8(e) of the Federal Rules of Civil Procedure also expressly recognizes alternative pleading of inconsistent theories. *See* FED. R. CIV. P. 8(e) (permitting a party to "set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses," and also providing that "[a] party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds").

***iii. Proper formulation of the rule.*** The court concludes that the rule properly

formulated from these precedents is that one who seeks to recover *solely* on an express contract—that is, one who *only* *pleads* an express contract theory—cannot recover on an implied contract theory as an alternative. However, Iowa decisions and rules of civil procedure, as well as the Federal Rules of Civil Procedure, specifically permit the *pleading* of express contract and implied contract (or quantum meruit) claims as *alternative theories for relief,* although recovery on only one such theory is ultimately allowed.

### c. Summary

In light of the proper formulation of the applicable rule, the court finds no "insuperable bar" to the plaintiffs' alternative pleading of their "quantum meruit" or "quantum valebant" claims as alternatives to any of their other claims, even assuming that any of their other claims actually assert an express contract theory, which the court finds it unnecessary to decide. *See Frey,* 44 F.3d at 671 (a motion to dismiss for failure to state a claim upon which relief can be granted should be granted only if there is some "insuperable bar to relief" on that claim); *accord Parnes,* 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim). That portion of the defendants' motion to dismiss seeking to dismiss the plaintiffs' "quantum meruit" or "quantum valebant" claims is, therefore, denied.

### 4. The claims of "Misappropriation of Corporate Opportunity/Breach of Fiduciary Duty/Breach of Duty of Good Faith and Fair Dealing"

In the remaining portion of the defendants' motion to dismiss, defendant Miner seeks dismissal of Counts XXVI through XXX, which claim "Misappropriation of Corporate Opportunity/Breach of Fiduciary Duty/Breach of Duty of Good Faith and

Fair Dealing." Defendant Miner contends that these claims are shareholder derivative claims and that the plaintiffs, who are merely creditors of defendant Northwood Doors, therefore, lack standing to assert them. The defendants rely on *Holden v. Construction Machinery Company*, 202 N.W.2d 348, 365–66 (Iowa 1972), Iowa Code § 490.740 (2000), and *Nachazel v. Mira Company Manufacturing*, 466 N.W.2d 248, 255 (Iowa 1991). The plaintiffs, however, counter that the claims in these counts are not inherently shareholder·derivative actions, but instead are actions that a creditor may properly maintain against officers and directors where fraud is alleged. They rely on *Unertl v. Bezanson*, 414 N.W.2d 321, 325 (Iowa 1987).

### a.  *Actions by creditors against corporate officers and directors*

■ In *Holden*, the Iowa Supreme Court defined a "derivative action" as follows:

> It should be inceptionally understood that where a corporation stands to suffer loss, or some detriment to stockholders' essential rights will be suffered if appropriate action is not· taken, and those in authority are at fault, or fail or refuse to act, then a stockholder may proceed on behalf of the corporation or other stockholders. This is commonly referred to as a derivative action.

*Holden*, 202 N.W.2d at 365. In the present action, the plaintiffs have alleged in Counts XXVI through XXX causes of action that appear to the court to fall within this definition of a "derivative action." As explained above, these counts allege that individual defendants Andrew Richey and Michael Miner held corporate fiduciary duties to one or more of the defendant companies, but appropriated business opportunities in relation to dealings between the plaintiffs and defendant Northwood Doors that, in fairness, belonged to defendant Northwood Doors, that were in line with the normal business activities of Northwood Doors, and in which Northwood Doors had a legitimate interest. These counts allege, further, that the individual defendants exploited the aforementioned business opportunities and that, by doing so, the individual defendants became constructive trustees for the benefit of defendant Northwood Doors as to all profits and benefits received from those opportunities. These counts also allege that the individual defendants "have failed to act with the utmost good faith and not for their personal interests in regard to the affairs of" the defendant companies, and that the individual defendants "have failed to provide the defendant companies with complete loyalty, honesty, and good faith." *See, e.g.*, Complaint, Count XXVI, ¶¶ 212–13. All of the wrongs alleged in these counts, therefore, are allegations that the "corporation [*i.e.*, Northwood Doors] stands to suffer loss, or [that] some detriment to stockholders' essential rights will be suffered if appropriate action is not taken," *see Holden*, 202 N.W.2d at 365, specifically, loss of business opportunities properly belonging to the corporation and violation of the stockholders' essential rights to good faith, honesty, and loyalty on the part of corporate officers and directors.

However, since the *Holden* decision neither mentions creditors nor standing to pursue a derivative action, it does not, as the defendants suggest, directly stand for the proposition that "[c]reditors of corporations have no standing to bring derivative actions unless they are also shareholders of the corporation." Defendant Miner's Brief In Support Of Motion To Dismiss, 3 (citing only *Holden*, 202 N.W.2d at 365–66, for this proposition). At best, there is a negative implication

from the language quoted above and the further discussion in *Holden* of the nature of the required loss or detriment to the stockholders' "essential rights" to justify a derivative action that a derivative action must be brought by a stockholder. *See Holden*, 202 N.W.2d at 365–66.

On the other hand, Iowa Code § 490.740 states, in pertinent, the following:

1. A person shall not commence a proceeding in the right of a domestic or foreign corporation unless the person was a shareholder of the corporation when the transaction complained of occurred or unless that person became a shareholder through transfer by operation of law from one who was a shareholder at that time.

Iowa Code § 490.740(1). A "creditor" would seem to fall within this prohibition on actions "in the right of a . . . corporation" by "persons" unless those "persons" are also shareholders. Similarly, in *Nachazel*, upon which the defendants also rely, the Iowa Supreme Court found that, "[i]n the absence of statutory language giving creditors a direct cause of action against corporate officers and directors, the rule generally followed is that a creditor may not maintain a personal action at law against officers or directors who have committed a wrong against the corporation, such as mismanagement, waste, or diversion of assets." *Nachazel*, 466 N.W.2d at 255. The court explained the reason for this rule, as follows:

The reason is that officers and directors owe a duty to the corporation and not to third parties who might be injured incidentally by the wrong committed against the corporation. Additionally, privity is lacking due to the absence of a contractual relationship between corporate officers and creditors.

*Id.* (internal citations omitted). In *Unertl*, upon which the plaintiffs rely, the court

also embraced the same rule and rationale. *Unertl*, 414 N.W.2d at 324–25.

However, in *Unertl*, the Iowa Supreme Court also recognized "one exception to the general rule: A creditor may maintain an action for fraud, if it is alleged there was a wrong personal to the creditor and not based on the duty owed to the corporation to properly manage its affairs and assets." *Unertl*, 414 N.W.2d at 325 (citing 18B Am.Jur.2d, *Corporations* § 1842, at 695). It is this exception upon which the plaintiffs now seize.

### b. The "fraud exception"

Interestingly, it was not alleged "fraud" by the individual defendants, who are purportedly officers or directors of the defendant companies, that the plaintiffs actually *pleaded* as the justification for their standing to pursue the claims in Counts XXVI through XXX. Rather, in their removed complaint, the plaintiffs' justification for bringing Counts XXVI through XXX, based on their standing as creditors rather than stockholders, was the insolvency of one or more of the defendant companies. Leaving that point aside, for the moment, the court will consider whether the plaintiffs can avail themselves of the "fraud exception" upon which they now rely.

The answer to that question, however, is no. In *Unertl*, the Iowa Supreme Court rejected the application of the "fraud exception" in the case before it, as follows:

The plaintiffs do not allege there was any fraud involved or that they were deceived into depositing their money with Morris Plan of Iowa. Even when the petition is viewed in its most favorable light, it does not allege the breach of a duty owed to these plaintiffs but, rather, one owed to the corporation not to dissipate assets. In such a case, the plaintiffs are only incidentally affected

and have no direct claim against the corporation.

*Unertl,* 414 N.W.2d at 325. Similarly, here, Counts XXVI through XXX do not allege "an action for fraud" based on an allegation "that there was a wrong personal to the creditor and not based on the duty owed to the corporation to properly manage its affairs and assets." *Id.* Instead, as in *Unertl,* even when the petition is viewed in the light most favorable to the plaintiffs, the allegations of wrongdoing in these counts allege breach of a duty owed *to the corporation* not to dissipate assets or usurp corporate opportunities, not a duty owed to these plaintiffs. As reiterated above, the precise allegations of wrongdoing are misappropriation and exploitation of business opportunities that, while allegedly *with* the plaintiffs, allegedly *belonged to the corporation,* Northwood Doors, and breach of fiduciary duty and the duty of good faith and fair dealing *owed to the corporation* or defendant companies, not to the plaintiffs. Thus, the plaintiffs were, at best, "only incidentally affected" by the wrongdoing alleged in these counts, and have no direct claim against the corporation or its directors or officers.

Elsewhere in the removed complaint—specifically, in Counts XXXI through XXXV—the plaintiffs do assert claims specifically denominated "Fraud." Moreover, unlike Counts XXVI through XXX, those "fraud" counts do allege wrongs directly to the plaintiffs, because they are based on allegedly fraudulent representations by defendant Northwood Doors of a willingness to pay for goods purchased from the plaintiffs, and that the plaintiffs were directly, not incidentally, injured by the fraudulent representations. Those "fraud" claims have not been challenged in the defendants' motion to dismiss, but they cannot

be used to invoke the "fraud exception" to save Counts XXVI through XXX, because they are based on entirely separate wrongdoing.

### c. The "insolvency" exception

As mentioned above, the justification *actually pleaded* for the plaintiffs' assertion that they, as creditors, can properly assert the claims based on the wrongdoing alleged in Counts XXVI through XXX was the insolvency of one or more of the defendant companies. Although the plaintiffs appear to have abandoned this justification in their resistance to the motion to dismiss, by not reasserting it therein, in an abundance of caution, the court will also consider it.

There is authority for the proposition that a creditor may have a cause of action against officers or directors of a corporation for mismanagement or waste of assets, *if* the corporation is insolvent or on the verge of insolvency. *See, e.g.,* 15A FLETCHER CYCLOPEDIA OF CORPORATIONS § 7468 (Perm. Ed.2000). However, Iowa does not recognize the broadest version of that exception. Instead, under Iowa law, a creditor may pursue an action against an officer or director of an insolvent corporation to recover from the officer or director payments from the insolvent corporation to the officer or director for "antecedent debts," but not for payments to the officer or director for "contemporaneous debts"— that is, debts incurred by the corporation to the officer or director at the time of the insolvency—assuming that the officer or director receiving the payments acted with the utmost good faith and fairness. *See, e.g., State v. Simmer Oil Corp.,* 231 Iowa 1041, 2 N.W.2d 760, 762 (Iowa 1942); *Boyd v. Boyd & Boyd, Inc.,* 386 N.W.2d 540, 542–43 (Iowa Ct.App.1986).[1] However,

---

1. A similar reading of the scope of the "insol-  vency exception" under Iowa law, on the ba-

even reading Counts XXVI through XXX of the removed complaint in the light most favorable to the plaintiffs, those counts do not allege improper, preferential payment of debts of the corporations to the individual defendants. Therefore, the narrow "insolvency exception" under Iowa law for suits by creditors against directors and officers of a corporation is not available here, even assuming that individual defendant Miner is such an officer or director.

### d. Summary

Because the plaintiffs cannot invoke either the "fraud" or "insolvency" exception to the rule barring suits by creditors against corporate officers or directors, there is an "insuperable bar" to their assertion of the claims in Counts XXVI through XXX. *See Frey*, 44 F.3d at 671 (a motion to dismiss for failure to state a claim upon which relief can be granted should be granted only if there is some "insuperable bar to relief" on that claim); *accord Parnes*, 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim). Thus, the defendants are entitled to dismissal of Counts XXVI through XXX of the removed complaint on the ground that the plaintiff creditors do not have standing to pursue the shareholder derivative actions alleged in those counts.

### III. CONCLUSION

The two motions before the court lead to mixed results, as follows:

1. The October 16, 2002, "Special Appearance" by China Hardwood Imports, which seeks denial of a non-existent request for entry of default or default judgment, is premature, and is consequently **denied without prejudice** to reassertion, in the form of a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, when and if such a challenge to the court's personal jurisdiction over China Hardwood Imports becomes appropriate.

2. The October 23, 2002, Partial Withdrawal of Motion to Dismiss by defendants Michael Miner and Northwood Doors, which seeks to withdraw that part of the motion to dismiss challenging the "Unjust Enrichment" claims in Counts XXI through XXV of the removed complaint, is **granted**.

3. The remaining portions of the motion to dismiss filed by defendant Miner on October 7, 2002, and joined in by defendant Northwood Doors, Inc., on October 16, 2002, is denied in part and granted in part. Specifically,

a. that part of the motion seeking dismissal of Counts VI through X ("Quantum Meruit," recharacterized by the plaintiffs without challenge as "Quantum Valebant") is **denied**, but

b. that part of the motion seeking dismissal of Counts XXVI through XXX ("Misappropriation of Corporate Opportunity/Breach of Fiduciary Duty/ Breach of Duty of Good Faith and Fair Dealing") is **granted**.

**IT IS SO ORDERED.**

---

sis of *Simmer Oil* and *Boyd,* can be found in the unpublished opinion of the Iowa Court of Appeals in *White v. Shaff,* 2001 WL 855307

(Iowa Ct.App. July 31, 2001) (unpublished op.).